# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### JANUARY 25, 2001 Session

## STEVE MAIROSE, ET AL. v. FEDERAL EXPRESS CORPORATION

**Direct Appeal from the Chancery Court for Shelby County**
**No. 104974-1; The Honorable Walter Evans, Chancellor**

---

**No. W2000-00076-COA-R3-CV - Filed July 24, 2001**

---

This appeal arises from a breach of contract claim brought by the Appellants against the Appellee. Following a six week jury trial, the jury entered a verdict in favor of the Appellants. The Appellee filed a motion for a judgment notwithstanding the verdict and, in the alternative, a motion for a new trial. The Chancery Court of Shelby County granted the Appellee's motion for a judgment notwithstanding the verdict and, in the alternative, granted a conditional new trial.

  The Appellants appeal the grant of the Appellee's motion for a judgment notwithstanding the verdict and the grant of a conditional new trial by the Chancery Court of Shelby County. For the reasons stated herein, we affirm in part, reverse in part, and remand this case for a new trial in accordance with this opinion.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part and Remanded**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY KIRBY LILLARD, J., joined.

Kenneth Roberts, Larry Kelly, Denver, CO; Robert L. J. Spence, Jr., M. Scott Willhite, Memphis, TN, for Appellants

R. Larry Brown, Colby S. Morgan, Memphis, TN; E. Scott Smith, Andrew D. McClintock, Atlanta, GA, for Appellees

**OPINION**

# I. Facts and Procedural History

The Appellee, Federal Express Corporation ("FedEx"), is a multi-billion dollar corporation which provides air and ground overnight express delivery services. Prior to the acquisition which is the subject of this appeal, FedEx delivery routes were limited mainly to the United States, and FedEx employed approximately 1,000 pilots ("pilots" or "crewmembers").

Employment conditions of the pilots are established by the Flight Crewmember Handbook ("FCH"). (Exhibit 1). The FCH is "a legal and binding agreement between each flight crewmember and Federal Express Corporation." FedEx and the pilots agree that the FCH is an individual contract between FedEx and each pilot. The FCH governs pilots' seniority, which regulates pilots' pay rates, flight schedules, vacations, and retirement benefits. FedEx operates under a date-of-hire seniority system so that the seniority number a pilot receives on his first date of employment establishes his position on the FedEx master seniority list. The goal of a FedEx pilot is to advance higher on the list, closer to the number one position.[1] A pilot advances on the list when pilots ahead of him on the list resign, retire, or are terminated. The FCH establishes the following provisions for seniority:

    1-85    Crewmember Seniority

    1-86    Seniority will begin to accrue on the date a pilot is employed by the Company as a crewmember and begins Initial Training and Basic Indoctrination. It will continue to accrue during his entire employment period.

    1-88    As of October, 1972, and henceforth, the date of employment as a crewmember will establish a crewmember's position on the Master Seniority List. Effective June 1, 1981, when two or more crewmembers are employed on the same date, they will be placed on the Master Seniority List according to the highest number represented by the last four digits of their social security number, i.e. the crewmember having the highest number (9999) will receive the lowest seniority number. When two or more crewmembers are employed on the same data and have the same last four digits, their relative seniority position will be determined by drawing lots.

    1-89    A crewmember will retain his seniority until he resigns or retires from the Company, or is terminated under any provision of this manual.

---

[1] The pilot in the number one position on the master seniority list has the first pick of the planes and routes to fly, the first pick of monthly schedules, and the first pick of vacations.

> 1-90    Seniority will govern all crewmembers in cases of promotion or demotion, retention in case of a reduction in personnel, assignment or reassignment due to expansion or reduction in schedules or equipment, and choice of Vacancies.

In July, 1988, a revision was made to the FCH which added section 1-96 to address the status of the pilots' seniority if FedEx acquired another airline.

> 1-96    In the event the Company acquires or merges with another airline employing Flight Crewmembers, any such crewmembers selected for retention will be awarded seniority in accordance with FCH 1-85, Crewmember Seniority, with the exception of FCH 1-88.

On December 16, 1988, FedEx entered into an agreement with Tiger International ("Tiger") which called for the acquisition of a majority interest in Tiger, of which Flying Tiger Line was a wholly owned subsidiary, by FedEx. By acquiring Tiger, FedEx acquired Tiger's international routes, allowing FedEx to deliver internationally. After entering into the agreement, FedEx immediately notified its pilots of the acquisition. The Tiger pilots became FedEx employees on August 7, 1989, referred to as "T-Day."

The acquisition agreement contained a provision that stated that FedEx would adopt labor protective provisions ("LPPs"). The relevant sections of the LPPs, sections three and thirteen, state, in pertinent part:

> Section 3. Insofar as the merger affects the seniority rights of the carriers' employees, provisions shall be made for the integration of seniority lists in a fair and equitable manner, including, where applicable, agreement through collective bargaining between the carriers and the representatives of the employees affected. In the event of failure to agree, the dispute may be submitted by either party for adjustment in accordance with Section 13.
>
> * * * *
>
> Section 13. (a) In the event that any dispute or controversy . . .arises with respect to the protections provided herein which cannot be settled by the parties within 20 days after the controversy arises, it may be referred by any party to an arbitrator selected from a panel of seven names furnished by the National Mediation Board for consideration and determination.

FedEx claims that had it not agreed to adopt the LPPs, specifically sections three and thirteen, the acquisition of Tiger would not have occurred.

FedEx immediately recognized that there could be a conflict between section 1-96 of the FCH and the LPPs unless section 1-96 was eliminated or suspended from the FCH before the acquisition. FedEx claims that the FCH was at all material times expressly amendable. The introduction section to the FCH states, in pertinent part:

> This Handbook sets forth the work rules and policies regarding flight crewmembers employed by Federal Express Corporation . . .these work rules and policies are in effect as of the date of publication of this Handbook, are a commitment on all parties involved, and remain in effect until formally revised (ref FCH Revision Procedure).

The FCH designates two methods by which a work rule or policy of the FCH can be modified: the revision process and the bulletin process. The revision process is a permanent change to the FCH. The bulletin process is a temporary change to the FCH. The bulletin process cannot be used to effectuate a permanent change to the FCH. A Notice of Exception bulletin, one of three types of bulletins, permits exceptions to certain provisions of the FCH.

> Where an operational need exists, either as a singular occurrence or one which spans a temporary and specific period of time, the Revision Committee may issue a bulletin to except certain provisions of the FCH in order to accommodate this need. A Notice of Exception must specify an effective date and will include a date of initiation and expiration. A Notice of Exception is in no way intended to abrogate the provisions in the FCH or to make arbitrary changes in its content without the use of the Revision Process.

The Revision Committee proposed a revision to section 1-96 which intended to delete section 1-96 from the FCH. The Flight Advisory Board ("FAB") approached flight management and proposed, in place of a revision, a bulletin to section 1-96 which would suspend application of section 1-96 for purposes of the Tiger acquisition only. On August 4, 1989, the Revision Committee approved a bulletin exception, Bulletin 89-25, to section 1-96 of the FCH. (Exhibit 1). Bulletin 89-25 provides, in pertinent part:

> The existing provisions of FCH 1-96 shall remain unchanged except for the purpose of the merger of the Federal Express/Flying Tigers Flight Deck Crewmembers Master Seniority Lists. The terms of a fair and equitable merged Federal Express/Flying Tigers Flight Deck Crewmember Master Seniority List(s) including any and all conditions, restrictions and priorities applicable thereto and deemed

> a part thereof, shall be constructed in accordance with Sections 3 and
> 13 of the LPPs and are incorporated herein.

The pilots argue that the bulletin process could not be used to abrogate their seniority under the master seniority list. The pilots also argue that seniority was not adjustable, revisable, or modifiable under the FCH because it was not considered a "work rule or policy." Additionally, the pilots argue that the FAB never had the authority to bind them to a bulletin exception to section 1-96.

The FedEx and Tiger Merger Committees were unable to negotiate an integrated seniority list pursuant to section three of the LPPs. Pursuant to section thirteen of the LPPs, the Merger Committees selected an arbitrator, George Nicolau ("Nicolau") to merge the two pilot seniority lists. Representatives of FedEx and the Merger Committees executed a Tripartite Agreement which stated that the Merger Committees had authority to represent the pilot groups of FedEx and Tiger and that Nicolau's award would be binding. After thirty-one days of arbitration hearings, Nicolau created a merged seniority list and issued an opinion and award on May 26, 1990. A copy of the opinion and award was delivered to each pilot. The merged seniority list became effective, for bidding purposes, in July, 1990. FedEx claims that the pilots took no immediate legal action to challenge the arbitration award until the filing of this lawsuit. FedEx contends that the pilots continued to work for FedEx and benefitted from the acquisition due to the opportunity to fly international routes and make more money. The pilots argue that the FedEx Merger Committee never had the authority to bind them to an arbitration agreement.

The merged seniority list placed hundreds of Tiger pilots ahead of FedEx pilots and caused FedEx pilots to fall hundreds of positions on the master seniority list. The pilots argue that the Tiger pilots were hired effective on T-Day such that they held junior dates of hire to the FedEx pilots and should have been "end-tailed" on the master seniority list in accordance with section 1-96 of the FCH. The pilots claim that the loss of positions on the master seniority list impacted their rates of pay, causing them to sustain damages for which they were not compensated.

Beginning in May, 1994, approximately one hundred fifty pilots filed complaints in five related cases against FedEx in the Chancery Court of Shelby County.[2] The pilots alleged that they sustained damages when FedEx breached their contracts by abrogating their seniority protections guaranteed in the FCH. The five cases were consolidated. In September, 1996, the parties filed cross motions for summary judgment. On January 20, 1997, the trial court denied the pilots' motion for summary judgment and granted FedEx's motion for summary judgment. The pilots filed a motion for reconsideration. On May 1, 1997, the trial court granted the pilots' motion for reconsideration and denied FedEx's motion for summary judgment.

---

[2] Gary J. Lovan et al. v. Federal Express Corp., No. 104203-1 (May, 1994); Mairose et al. v. Federal Express Corp., No. 104974-1 (December, 1994); Smith et al. v. Federal Express Corp., No. 105026-2 (December, 1994); Allen et al. v. Federal Express Corp., No. 105222-1 (February, 1995); Albanese v. Federal Express Corp., No. 106772-2 (December, 1995).

On August 16, 1999, the parties submitted a joint pre-trial order, which designated, for trial purposes, ten representative plaintiffs from the consolidated cases. The following ten plaintiffs were named: Pete Camerota ("Camerota"), Dana Cockrell ("Cockrell"), Craig Covic ("Covic"), Ed Davis, Jr. ("Davis"), Charles Hohensee ("Hohensee"), Gary Lovan ("Lovan"), Steve Mairose ("Mairose"), Lance Nightwalker ("Nightwalker"), Jim Sullivan ("Sullivan"), and David Tripp ("Tripp"). The jury trial commenced on September 8, 1999. At the close of the pilots' proof on October 4, 1999, FedEx moved for a directed verdict. The trial court granted FedEx's motion for a directed verdict only with respect to the pilots' claims of good faith and fair dealing, activation pay, and passover pay. The trial court stated that it would reserve its decision on the remaining issues until after the jury made its determination.

On October 14, 1999, the jurors returned a verdict in favor of the pilots, finding specifically:

1)      The FCH was not properly changed, excepted to, in accordance with its terms by Bulletin 89-25 to effectively suspend the application of Section 1-96 and other relevant provisions involving crewmembers' seniority rights for the purpose of the Tiger merger.

2)      FedEx did violate, breach, the plaintiffs' contractual rights under Section 1-96 and other relevant provisions of the FCH involving crewmembers' seniority rights by abrogating and incorporating into the FCH the merged seniority list issued by Arbitrator Nicolau in May, 1990.

3)      None of the plaintiffs were barred from recovering money damages from FedEx. The plaintiffs did sustain monetary damages. The plaintiffs did not waive their right to challenge the arbitration process and merged seniority list awarded due to any inaction, ratification, or failure to file their objections or suits for judicial relief within a reasonable time.

4)      The plaintiffs sustained damages for which they should recover from August, 1989 to May, 1999.

5)      Monetary damages should be awarded to each of the ten plaintiffs for damages sustained by each for breach of their FCH contract by FedEx in the following amounts:

| | |
|---|---|
| Camerota | $462,730.00 |
| Cockrell | $299,738.00 |
| Covic | $377,763.00 |
| Davis | $393,427.00 |
| Hohensee | $501,417.00 |
| Lovan | $237,249.00 |
| Mairose | $391,257.00 |
| Nightwalker | $314,000.00 |
| Sullivan | $430,384.00 |
| Tripp | $231,192.00 |

On October 29, 1999, FedEx filed a motion for a judgment notwithstanding the verdict and, in the alternative, a motion for a new trial. On December 15, 1999, the trial court granted FedEx's motion for a judgment notwithstanding the verdict and, in the alternative, granted a conditional new trial. This appeal followed.

## II.  Law and Analysis

The following issues, as we perceive them, are presented for our review:

1) Whether all ten plaintiffs involved in the case below are proper parties to this appeal.
2) Whether the trial court applied the correct standard of review to the Appellee's post-trial motion for a judgment notwithstanding the verdict.
3) Whether the trial court erred by granting the Appellee's post-trial motion for a judgment notwithstanding the verdict.
4) Whether the trial court erred by granting the Appellee's motion for a conditional new trial.
5) Whether the trial court erred by limiting the Appellants' claim for future damages.
6) Whether the trial court erred by denying the Appellants' motion for class certification.
We will examine each of these issues in turn.

### Jurisdiction

The first issue presented for our review is whether all ten plaintiffs involved in the case below are proper parties to this appeal.  The Appellee argues that eight plaintiffs, Camerota, Cockrell, Covic, Davis, Hohensee, Nightwalker, Sullivan, and Tripp, are not proper parties to this appeal because they are not named in the notice of appeal.  The Appellee requests that this Court dismiss an attempt at appeal by any plaintiff other than Mairose and Lovan.  A notice of appeal was filed with the trial court on January 5, 2000, naming Mairose, *et al.* and Lovan in the heading to the document.  The text of the notice of appeal stated, "Notice is hereby given that the above named plaintiffs hereby appeal to the Court of Appeals from the final judgment entered in this action on the 15th day of December, 1999."  The names of Camerota, Cockrell, Covic, Davis, Hohensee, Nightwalker, Sullivan, and Tripp do not appear in the notice of appeal.  We must determine whether the phrase "et al." in the heading of a notice of appeal preserves the right of a co-party's appeal when the notice of appeal fails to specifically state a co-party's name.

Rule 4(a) of the Tennessee Rules of Appellate Procedure states that a notice of appeal shall be filed with the clerk of the trial court within thirty days after the date of entry of judgment.  See TENN. R. APP. P. 4(a).  Rule 2 of the Tennessee Rules of Appellate Procedure prohibits the extension of time for filing a notice of appeal as prescribed by Rule 4.  See TENN. R. APP. P. 2.  Rule 3(f) of the Tennessee Rules of Appellate Procedure states that "[t]he notice of appeal shall specify the party or parties taking the appeal . . . . An appeal shall not be dismissed for informality of form or title of the notice of appeal."  TENN. R. APP. P. 3(f).

In <u>Town of Carthage, Tennessee v. Smith County</u>, No. 01-A-01-9308-CH00391, 1995 WL 92266, at *1 (Tenn. Ct. App. Mar. 10, 1995), the court determined whether "the absence of a party's name from a notice of appeal is the type of informality that will not affect the party's standing as an appellant." <u>Id.</u> at *3. The court cited the United States Supreme Court case of <u>Torres v. Oakland Scavenger Co.</u>, 487 U.S. 312 (1988), in which the Supreme Court construed Rule 3(c) of the Federal Rules of Appellate Procedure, a rule identical, in pertinent part, to Rule 3(f) of the Tennessee Rules of Appellate Procedure.[3] The petitioner in <u>Torres</u> argued that the use of the phrase "et al." in the notice of appeal sufficiently indicated his intention to appeal. In rejecting his argument, the Supreme Court stated:

> The purpose of the specificity requirement of Rule 3(c) is to provide notice both to the opposition and to the court of the identity of the appellant or appellants. The use of the phrase et al.," which literally means "and others," utterly fails to provide such notice to either intended recipient. Permitting such vague designation would leave the appellee and the court unable to determine with certitude whether a losing party not named in the notice of appeal should be bound by an adverse judgment or held liable for costs or sanctions. The specificity requirement of Rule 3(c) is met only by some designation that gives fair notice of the specific individual or entity seeking to appeal.

<u>Id.</u> at 318.

The <u>Torres</u> court held that "[the failure to name a party in a notice of appeal is more than excusable 'informality'; it constitutes a failure of that party to appeal." <u>Id.</u> at 314. The <u>Town of Carthage</u> court adopted the reasoning of the <u>Torres</u> court, stating, "[t]o be considered an appellant, a party must file a timely notice of appeal in its own name, or it must be named as an appellant in a timely joint notice of appeal filed in accordance with Tenn. R. App. P. 16(a). Parties who do neither are simply not before the court as appellants."[4] <u>Town of Carthage</u>, 1995 WL 92266, at *4.

---

[3] Prior to its 1993 amendment, Rule 3(c) of the Federal Rules of Appellate Procedure stated that "the notice of appeal shall specify the party or parties taking the appeal . . . . An appeal shall not be dismissed for informality of form or title of the notice of appeal." FED R. APP. P. 3(c).

[4] The court also cited with approval decisions from other state courts which concluded that appellate courts do not have jurisdiction over parties not specified in the notice of appeal. <u>See id.</u> (citing <u>Ozark Acoustical Contractors, Inc. v. National Bank of Commerce</u>, 786 S.W.2d 813, 814 (Ark. 1990); <u>Manzi v. Montgomery Elevator Co.</u>, 865 P.2d 902, 904-05 (Colo. Ct. App. 1993); <u>Stewart Props.,Inc. v. Brennan</u>, 807 P.2d 606, 608 (Haw. Ct. App. 1991); <u>Cummings v. City Council</u>, 551 N.E.2d 46, 49 (Mass. App. Ct. 1990); <u>Malone v. Johnson</u>, 866 S.W.2d 935, 940 (Mo. Ct. App. 1993) (dicta); <u>Seipelt v. Motorists Mut. Ins. Co.</u>, 611 N.E.2d 917, 918 (Ohio Ct. App. 1992); <u>Tinker Inv. & Mortgage Corp. v. City of Midwest City</u>, 873 P.2d 1029, 1036 n.28 (Okla. 1994); <u>Ford Motor Credit Co. v. Mills</u>, 418 N.W.2d 14, 16 (Wis. Ct. App. 1987)).

In 1993, Congress amended Rule 3(c) of the Federal Rules of Appellate Procedure to state that the notice of appeal must

> specify the party or parties taking the appeal by naming each one in the caption or body of the notice, but an attorney representing more than one party may describe those parties with such terms as "all plaintiffs," "the defendants," "the plaintiffs A, B, et al.," or "all defendants except X". . . . An appeal must not be dismissed for informality of form or title of the notice of appeal, or for failure to name a party whose intent to appeal is otherwise clear from the notice.

FED R. APP. P. 3(c).

The notes to the 1993 amendment to Rule 3(c) stated that the amendment was in direct reaction to litigation spawned by the Supreme Court's decision in Torres. See FED. R. APP. P. 3(c), advisory committee's note, 1993 amendment. "[I]n order to prevent the loss of a right to appeal through inadvertent omission of a party's name or continued use of such terms as 'et al.,' . . . the amendment allows an attorney representing more than one party the flexibility to indicate which parties are appealing without naming them individually." Id. The notes to the 1993 amendment further explain that the test to determine whether a designation in a notice of appeal is sufficient under Rule 3(c) is "whether it is objectively clear that a party intended to appeal." Id. Federal courts construing Rule 3(c) in light of the 1993 amendment have found use of the phrase "et al." sufficient to confer jurisdiction and held the reasoning of Torres to be effectively overruled. See Frey v. City of Herculaneum, 44 F.3d 667, 670 (8th Cir. 1995); Cleveland v. Porca Co., 38 F.3d 289, 293-94 (7th Cir. 1994); Dodger's Bar & Grill, Inc. v. Johnson County Bd. of County Comm'rs, 32 F.3d 1436, 1440-41 (10th Cir. 1994); Ford v. Elsbury, 32 F.3d 931, 933-34 (5th Cir. 1994).

Inasmuch as Rule 3(f) of the Tennessee Rules of Appellate Procedure has not been similarly amended, we find the interpretation of Rule 3(f) based on the construction of pre-amendment Rule 3(c) of the Federal Rules of Appellate Procedure under Torres applicable. Accordingly, use of the phrase "et al." in the notice of appeal in the case at bar fails to provide notice to the Appellee and this Court of the identity of the intended appellants. Therefore, we find that Mairose and Lovan alone are proper parties to this appeal. This Court does not have jurisdiction over an appeal by Camerota, Cockrell, Covic, Davis, Hohensee, Nightwalker, Sullivan, and Tripp because they were not specifically named as appellants in the notice of appeal.

**Judgment Notwithstanding the Verdict**

The second and third issues presented for our review are (1) whether the trial court applied the correct standard of review to the Appellee's post-trial motion for a judgment notwithstanding the verdict; and (2) whether the trial court erred by granting the Appellee's post-trial motion for a

judgment notwithstanding the verdict. A post-trial motion for a judgment notwithstanding the verdict is governed by Rule 50.02 of the Tennessee Rules of Civil Procedure. Rule 50.02 states:

> Whenever a motion for a directed verdict made at the close of all the evidence is denied or for any reason is not granted, the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. Within 30 days after the entry of judgment a party who has moved for a directed verdict may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with the party's motion for a directed verdict; or if a verdict was not returned, such party, within 30 days after the jury has been discharged, may move for a judgment in accordance with such party's motion for a directed verdict. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned, the court may allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as if the requested verdict had been directed. If no verdict was returned the court may direct the entry of judgment as if the requested verdict had been directed or may order a new trial.

TENN. R. CIV. P. 50.03.

In ruling on a motion for a judgment notwithstanding the verdict, the standard applied by both the trial court and the appellate court is the same as that applied to a motion for a directed verdict made during the trial. See Holmes v. Wilson, 551 S.W.2d 682, 685 (Tenn. 1977); ROBERT BANKS, JR. & JUNE F. ENTMAN, TENNESSEE CIVIL PROCEDURE § 12-1(c) (1999). In ruling on a motion for a directed verdict, both the trial court and the appellate court are required to review the record, discard all countervailing evidence, take the strongest legitimate view of the evidence in favor of the non-moving party, and allow all reasonable inferences in his favor. See Williams v. Brown, 860 S.W.2d 854, 857 (Tenn. 1993) (quoting Cecil v. Hardin, 575 S.W.2d 268, 271 (Tenn. 1978)); Jones v. Zayre, Inc., 600 S.W.2d 730, 731 (Tenn. Ct. App. 1980). "The court may grant the motion only if, after assessing the evidence according to the foregoing standards, it determines that reasonable minds could not differ as to the conclusions to be drawn from the evidence." Eaton v. McLain, 891 S.W.2d 587, 590 (Tenn. 1994). When reviewing a motion for a judgment notwithstanding the verdict, the trial court and the appellate court may not assess the credibility of the witnesses. See Mullins v. Seaboard Coastline Ry. Co., 517 S.W.2d 198, 201 (Tenn. Ct. App. 1974).

A motion for a judgment notwithstanding the verdict and a motion for a new trial are subject to separate and distinct standards of review. See Fye v. Kennedy, 991 S.W.2d 754, 766 (Tenn. Ct. App. 1998). In ruling on a motion for a judgment notwithstanding the verdict, the trial court and the appellate court may not weigh the evidence or determine the preponderance of the evidence, which

is the proper inquiry when ruling on a motion for a new trial. See id. at 765; ROBERT BANKS, JR. & JUNE F. ENTMAN, TENNESSEE CIVIL PROCEDURE § 12-1(c) (1999). Furthermore, unlike a motion for a new trial, the trial judge does not assume the role of the thirteenth juror when ruling on a motion for a judgment notwithstanding the verdict. See Fye, 991 S.W.2d at 766. As our supreme court explained in Holmes v. Wilson, 551 S.W.2d 682 (Tenn. 1977):

> When dual motions are presented, i.e. motions for a directed verdict and for a new trial, two standards of consideration are involved. On motion for judgment n.o.v., the sole concern of the trial judge is the existence of material evidence in accordance with the above criteria whereas on motion for a new trial he has a substantially wider, though not unbridled, latitude and may set the verdict aside when it is against the weight of the evidence or when the interests of justice would be served thereby.

See id. at 685.

In the case at bar, the Appellants argue that the trial court misapprehend its role by granting the Appellee's motion for a judgment notwithstanding the verdict under a thirteenth juror/new trial standard of review rather than the proper standard of review for a judgment notwithstanding the verdict. On December 1, 1999, at the close of the hearing of the post-trial motions, Chancellor Walter Evans stated, "[the Court is going to . . . render a considered opinion involving findings of fact as a 13[th] juror and conclusions of law which the Court feels are applicable in ruling on the various motions that are before the Court." On December 3, 1999, Chancellor Evans rendered his oral decision, findings of fact, and conclusions of law from the bench while reading a twenty-seven page handwritten opinion.[5] Again, Chancellor Evans stated that he assumed the role of 13th juror in making his conclusions:

> All of these assertions by the plaintiff to invalidate Bulletin 89-25 in this Court's considered opinion, as the 13[th] juror, are without merit and cannot be sustained by the weight of the evidence. . . . And for all of the above reasons, this Court grants the defendant's motion for a directed verdict and enters a judgment in favor of the defendant, notwithstanding the jury verdict.

In the two page judgment order entered on December 15, 1999, Chancellor Evans stated the correct standard of review for granting the motion for a judgment notwithstanding the verdict "in

---

[5] The Appellants previously filed a motion with this Court to supplement the record with Chancellor Evans' twenty-seven page handwritten opinion. This Court denied the Appellants' motion on June 28, 2000. The Appellants urge this Court to revisit the issue due to the exceptional circumstances present in this case. We decline to reconsider the denial of the Appellants' motion. Chancellor Evans read his twenty-seven page handwritten opinion into the record at the hearing on December 3, 1999. This Court has the transcript of the hearing, and thus the text of the handwritten opinion, before us for our review.

viewing the material evidence most favorable to Plaintiffs." The December 15, 1999, judgment order incorporated a thirteen page document entitled Findings of Fact and Conclusions of Law on Defendant's Motion for Directed Verdict and/or Motion for New Trial. In the thirteen page document, Chancellor Evans once again stated the incorrect standard and seemingly adopted a clear and convincing standard of review for granting a motion for a judgment notwithstanding the verdict. In concluding that the jury verdict would have to be set aside, Chancellor Evans stated, "THIS COURT CONCLUDES AND SO HOLDS THAT THE RECORD, BY CLEAR AND CONVINCING PROOF, ESTABLISHES THAT THE PLAINTIFFS SUSTAINED NO ASCERTAINABLE DAMAGES AS A RESULT OF DEFENDANT'S ALLEGED BREACH OF THE FCH." Chancellor Evans further stated, "All of these assertions by the Plaintiffs to invalidate Bulletin 89-25, in this Court's considered opinion, by clear and convincing proof after providing all legitimate reasonable inferences from the evidence, are without merit and cannot be sustained by the evidence."

Case law in Tennessee holds that an appellate court must reverse and remand a trial court's ruling when the trial judge makes comments indicating he has misconceived his duty. See Shivers v. Ramsey, 937 S.W.2d 945, 947 (Tenn. Ct. App. 1996); Sholodge Franchise Sys., Inc. v. McKibbon Bros., Inc., 919 S.W.2d 36, 41 (Tenn. Ct. App. 1995); Miller v. Doe, 873 S.W.2d 346, 347 (Tenn. Ct. App. 1993). In Sholodge Franchise Systems, Inc. v. McKibbon Brothers, Inc., 919 S.W.2d 36 (Tenn. Ct. App. 1995), the court stated that an appellate court must presume that a trial judge performed his function adequately when he simply approves a jury verdict without comment when ruling on a motion for a new trial. However,

> [i]n the event that the trial court does state his reasons, an appellate court is to examine them only for the purposes of determining whether the trial court properly reviewed the evidence, and was satisfied or dissatisfied with the verdict. However, if in discharging his duty as thirteenth juror, the trial judge makes comments which indicate that he has misconceived his duty or clearly has not followed it, this court must reverse and remand the case for a new trial.

Id. at 41 (internal citations omitted).

From our review of the record, we conclude that Chancellor Evans misconceived his duty and applied the incorrect standard in ruling on the Appellee's motion for a judgment notwithstanding the verdict. Additionally, after an independent review of the record, discarding all countervailing evidence, taking the strongest legitimate view of the evidence in favor of the Appellants, and allowing all reasonable inferences in their favor, we find the existence of material evidence in support of the jury verdict. Accordingly, we reverse the trial court's grant of the Appellee's motion for a judgment notwithstanding the verdict.

**Conditional New Trial**

-12-

The fourth issue presented for our review is whether the trial court erred by granting the Appellee's motion for a conditional new trial. Under Rule 50.03 of the Tennessee Rules of Civil Procedure, when a motion for a judgment notwithstanding the verdict is joined with an alternative motion for a new trial and the trial court grants the judgment notwithstanding the verdict, it must also rule on the motion for a new trial by determining whether it should be granted if the judgment notwithstanding the verdict is thereafter vacated or reversed. See TENN. R. CIV. P. 50.03. Rule 50.03 provides, in pertinent part: "If the motion for a new trial is thus conditionally granted and the judgment is reversed on appeal, the new trial shall proceed unless the appellate court has otherwise entered." Id. Thus, the appellate court, upon determining that the trial court erroneously granted a motion for a judgment notwithstanding the verdict, may remand the case for a new trial or may reinstate the jury verdict. See Holmes, 551 S.W.2d at 685. The general rule, however, is to remand the case for a new trial except in cases of exceptional circumstances and when the interest of justice so requires. See id. at 687.

> [W]e believe the correct rule to be that in those cases wherein the trial court has granted judgment n.o.v. and has conditionally granted a new trial the appellate court, upon reversal of the judgment n.o.v., should, as a general rule, remand the action for a new trial. Appellate courts, however, may exercise a sound judicial discretion in the matter and may, under exceptional circumstances and in the interest of justice, reinstate the verdict of the jury where the trial judge erred in ruling on a controlling conclusion of law and has approved the verdict of the jury.

Id.

From our review of the record in the case at bar, we find no exceptional circumstances to warrant a departure from the general rule. Accordingly, we affirm the trial court's grant of the Appellee's motion for a conditional new trial.

**Damages**

The fifth issue presented for our review is whether the trial court erred by limiting the Appellants' claim for future damages. Because we affirm the trial court's decision granting a conditional new trial, we find it is unnecessary to discuss the issue relating to damages.

**Class Certification**

The final issue presented for our review is whether the trial court erred by denying the Appellants' motion for class certification. Lovan filed a motion for class certification in which he sought to represent the entire group of pre-merger FedEx pilots, totaling approximately 1105 pilots. On June 30, 1995, the trial court denied the motion for class certification. The Appellants argue that

the trial court improperly denied the motion because the prerequisites for Rule 23.01 of the Tennessee Rules of Civil Procedure were met. Rule 23.01 states:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable,(2) there are questions of law or fact common to the class,(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

TENN. R. CIV. P. 23.01.

The party seeking class certification has the burden to show that the prerequisites of Rule 23.01 have been satisfied. See Hamilton v. Gibson County Util. Dist., 845 S.W.2d 218, 225 (Tenn. Ct. App. 1992) (citing Albriton v. Hartsville Gas Co., 655 S.W.2d 153, 154 (Tenn. Ct. App. 1983)). The decision to certify a class or to deny certification of a class is within the trial court's sound discretion. See Warren v. Scott, 845 S.W.2d 780, 782 (Tenn. Ct. App. 1992). Thus, we will reverse a trial court's decision to deny certification of a class only when the party seeking class certification has demonstrated an abuse of the trial court's discretion. See Hamilton, 845 S.W.2d at 225. We find no abuse of discretion by the trial court in the case at bar. Accordingly, we affirm the trial court's denial of the Appellants' motion for class certification.

The Appellee raised the following issues for our review in the event this Court reversed both the decision of the trial court granting the judgment notwithstanding the verdict and the decision of the trial court granting a conditional new trial:

1) Whether the Appellee was entitled to a directed verdict pursuant to the affirmative defense of arbitration and award.
2) Whether the Appellee was entitled to a directed verdict pursuant to the affirmative defense of waiver.
3) Whether the Appellee was entitled to a new trial because the weight of the evidence preponderated against the jury verdict.
4) Whether the Appellee was entitled to a new trial because the jury verdict was prejudiced by the improper admission of parol evidence.
5) Whether the Appellee was entitled to a new trial because the jury verdict was prejudiced by the failure of the trial court to give appropriate jury instructions.
Because we affirmed the trial court's grant of a conditional new trial in favor of the Appellee, we decline to address these issues.

### III.  Conclusion

For the foregoing reasons, the decision of the trial court is affirmed in part and reversed in part, and the case is remanded for a new trial in accordance with this opinion. Costs of this appeal are taxed equally against the Appellants, Steve Mairose and Gary Lovan, and the Appellee, Federal Express Corporation, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE