IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
APRIL 20, 2006 Session

## STEVE MAIROSE, ET AL. v. FEDERAL EXPRESS CORPORATION

**Direct Appeal from the Chancery Court for Shelby County**
**Nos. 104974-1, 104203-1, 105026-2, 105222-1, 106772-2 (Consolidated)**
**D. J. Alissandratos, Chancellor**

---

**No. W2005-01527-COA-R3-CV - Filed September 11, 2006**

---

This is the second time this case has been on appeal. This case stems from an alleged breach of an employment contract between an employer and its employees. In this appeal, we are asked to determine (1) whether the chancery court erred when it dismissed eight of the ten plaintiffs from the appeal as they had not perfected an appeal to the trial court's judgment notwithstanding the verdict that was reversed on appeal; (2) whether the chancery court erred when it found that the employer had not breached its contract when it incorporated an integrated master seniority list that did not "endtail" pilots from another corporation that merged into the employer; (3) whether, assuming that a breach occurred, the employees waived their breach of contract claims by failing to object to the alleged breach in a timely fashion; and (4) whether the chancery court erred when it awarded discretionary costs for court reporter expense for hearings. On appeal, the employees contend that the chancery court erred when it dismissed eight of the ten employees as they had not properly perfected an appeal because the eight employees should be able to benefit from the appellate decision regarding the remaining two employees. The employees also assert that the employer breached their employment contract when it incorporated an integrated seniority list altering their seniority rights and that they had not waived any claim for breach of contract because of their conduct. Finally, the employees contend that the chancery court erred when it awarded discretionary costs for court reporter expenses for hearings as rule 54.04(2) of the Tennessee Rules of Civil Procedure allow for the recovery of court reporter expenses for depositions or trials only. The employer contends that it did not breach the employment contract and that, assuming breach, the employees waived any breach of contract claim because they failed to challenge the arbitration award that established the integrated master seniority list in a timely fashion and that they failed to object to the breach of contract in a timely fashion after the breach. We affirm the decision of the chancery court finding that the employer had not breached its employee contract with its employees and affirm the decision of the chancery court dismissing eight of the ten employees from the new trial as they had not properly perfected an appeal to the chancery court's original judgment notwithstanding the verdict. Further, we affirm the chancery court's award of discretionary costs.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Robert L. J. Spence, Jr., Memphis, TN; M. Scott Willhite, Jonesboro, AR, for Appellants

Connie Lewis Lensing, Richard C. Saxton, Edward J. Efkeman, Memphis, TN, for Appellee

**OPINION**

**I.   FACTS & PROCEDURAL HISTORY**

This is the second time this case has been on appeal to this Court.  In our first opinion concerning this matter, we noted the following pertinent factual and procedural history:

> The Appellee, Federal Express Corporation ("FedEx" [or "Appellee"]), is a multi-billion dollar corporation which provides air and ground overnight express delivery services. Prior to the acquisition which is the subject of this appeal, FedEx delivery routes were limited mainly to the United States, and FedEx employed approximately 1,000 pilots ("pilots" or "crewmembers").
>
> Employment conditions of the pilots are established by the Flight Crewmember Handbook ("FCH"). (Exhibit 1). The FCH is "a legal and binding agreement between each flight crewmember and Federal Express Corporation." FedEx and the pilots agree that the FCH is an individual contract between FedEx and each pilot. The FCH governs pilots' seniority, which regulates pilots' pay rates, flight schedules, vacations, and retirement benefits. FedEx operates under a date-of-hire seniority system so that the seniority number a pilot receives on his first date of employment establishes his position on the FedEx master seniority list. The goal of a FedEx pilot is to advance higher on the list, closer to the number one position.  A pilot advances on the list when pilots ahead of him on the list resign, retire, or are terminated. The FCH establishes the following provisions for seniority:
>
> > 1-85 Crewmember Seniority
> >
> > 1-86 Seniority will begin to accrue on the date a pilot is employed by the Company as a crewmember and begins Initial Training and Basic Indoctrination. It

-2-

will continue to accrue during his entire employment period.

1-88 As of October, 1972, and henceforth, the date of employment as a crewmember will establish a crewmember's position on the Master Seniority List. Effective June 1, 1981, when two or more crewmembers are employed on the same date, they will be placed on the Master Seniority List according to the highest number represented by the last four digits of their social security number, i.e. the crewmember having the highest number (9999) will receive the lowest seniority number. When two or more crewmembers are employed on the same data and have the same last four digits, their relative seniority position will be determined by drawing lots.

1-89 A crewmember will retain his seniority until he resigns or retires from the Company, or is terminated under any provision of this manual.

1-90 Seniority will govern all crewmembers in cases of promotion or demotion, retention in case of a reduction in personnel, assignment or reassignment due to expansion or reduction in schedules or equipment, and choice of Vacancies.

In July, 1988, a revision was made to the FCH which added section 1-96 to address the status of the pilots' seniority if FedEx acquired another airline.

1-96 In the event the Company acquires or merges with another airline employing Flight Crewmembers, any such crewmembers selected for retention will be awarded seniority in accordance with FCH 1-85, Crewmember Seniority, with the exception of FCH 1-88.

On December 16, 1988, FedEx entered into an agreement with Tiger International ("Tiger") which called for the acquisition of a majority interest in Tiger, of which Flying Tiger Line was a wholly owned subsidiary, by FedEx. By acquiring Tiger, FedEx acquired Tiger's international routes, allowing FedEx to deliver

internationally. After entering into the agreement, FedEx immediately notified its pilots of the acquisition. The Tiger pilots became FedEx employees on August 7, 1989, referred to as "T-Day."

The acquisition agreement contained a provision that stated that FedEx would adopt labor protective provisions ("LPPs"). The relevant sections of the LPPs, sections three and thirteen, state, in pertinent part:

> Section 3. Insofar as the merger affects the seniority rights of the carriers' employees, provisions shall be made for the integration of seniority lists in a fair and equitable manner, including, where applicable, agreement through collective bargaining between the carriers and the representatives of the employees affected. In the event of failure to agree, the dispute may be submitted by either party for adjustment in accordance with Section 13.
>
> * * * *
>
> Section 13. (a) In the event that any dispute or controversy . . . arises with respect to the protections provided herein which cannot be settled by the parties within 20 days after the controversy arises, it may be referred by any party to an arbitrator selected from a panel of seven names furnished by the National Mediation Board for consideration and determination.

FedEx claims that had it not agreed to adopt the LPPs, specifically sections three and thirteen, the acquisition of Tiger would not have occurred.

FedEx immediately recognized that there could be a conflict between section 1-96 of the FCH and the LPPs unless section 1-96 was eliminated or suspended from the FCH before the acquisition. FedEx claims that the FCH was at all material times expressly amendable. The introduction section to the FCH states, in pertinent part:

> This Handbook sets forth the work rules and policies regarding flight crewmembers employed by Federal Express Corporation . . . these work rules and policies are in effect as of the date of publication of this Handbook, are a commitment on all parties involved,

and remain in effect until formally revised (ref FCH Revision Procedure).

The FCH designates two methods by which a work rule or policy of the FCH can be modified: the revision process and the bulletin process. The revision process is a permanent change to the FCH. The bulletin process is a temporary change to the FCH. The bulletin process cannot be used to effectuate a permanent change to the FCH. A Notice of Exception bulletin, one of three types of bulletins, permits exceptions to certain provisions of the FCH.

> Where an operational need exists, either as a singular occurrence or one which spans a temporary and specific period of time, the Revision Committee may issue a bulletin to except certain provisions of the FCH in order to accommodate this need. A Notice of Exception must specify an effective date and will include a date of initiation and expiration. A Notice of Exception is in no way intended to abrogate the provisions in the FCH or to make arbitrary changes in its content without the use of the Revision Process.

The Revision Committee proposed a revision to section 1-96 which intended to delete section 1-96 from the FCH. The Flight Advisory Board ("FAB") approached flight management and proposed, in place of a revision, a bulletin to section 1-96 which would suspend application of section 1-96 for purposes of the Tiger acquisition only. On August 4, 1989, the Revision Committee approved a bulletin exception, Bulletin 89-25, to section 1-96 of the FCH. (Exhibit 1). Bulletin 89- 25 provides, in pertinent part:

> The existing provisions of FCH 1-96 shall remain unchanged except for the purpose of the merger of the Federal Express/Flying Tigers Flight Deck Crewmembers Master Seniority Lists. The terms of a fair and equitable merged Federal Express/Flying Tigers Flight Deck Crewmember Master Seniority List(s) including any and all conditions, restrictions and priorities applicable thereto and deemed a part thereof, shall be constructed in accordance with Sections 3 and 13 of the LPPs and are incorporated herein.

The pilots argue that the bulletin process could not be used to abrogate their seniority under the master seniority list. The pilots also argue that seniority was not adjustable, revisable, or modifiable under the FCH because it was not considered a "work rule or policy." Additionally, the pilots argue that the FAB never had the authority to bind them to a bulletin exception to section 1-96.

The FedEx and Tiger Merger Committees were unable to negotiate an integrated seniority list pursuant to section three of the LPPs. Pursuant to section thirteen of the LPPs, the Merger Committees selected an arbitrator, George Nicolau ("Nicolau") to merge the two pilot seniority lists. Representatives of FedEx and the Merger Committees executed a Tripartite Agreement which stated that the Merger Committees had authority to represent the pilot groups of FedEx and Tiger and that Nicolau's award would be binding. After thirty-one days of arbitration hearings, Nicolau created a merged seniority list and issued an opinion and award on May 26, 1990. A copy of the opinion and award was delivered to each pilot. The merged seniority list became effective, for bidding purposes, in July, 1990. FedEx claims that the pilots took no immediate legal action to challenge the arbitration award until the filing of this lawsuit. FedEx contends that the pilots continued to work for FedEx and benefitted from the acquisition due to the opportunity to fly international routes and make more money. The pilots argue that the FedEx Merger Committee never had the authority to bind them to an arbitration agreement.

The merged seniority list placed hundreds of Tiger pilots ahead of FedEx pilots and caused FedEx pilots to fall hundreds of positions on the master seniority list. The pilots argue that the Tiger pilots were hired effective on T-Day such that they held junior dates of hire to the FedEx pilots and should have been "end-tailed" on the master seniority list in accordance with section 1-96 of the FCH. The pilots claim that the loss of positions on the master seniority list impacted their rates of pay, causing them to sustain damages for which they were not compensated.

Beginning in May, 1994, approximately one hundred fifty pilots filed complaints in five related cases against FedEx in the Chancery Court of Shelby County. The pilots alleged that they sustained damages when FedEx breached their contracts by abrogating their seniority protections guaranteed in the FCH. The five cases were consolidated. In September, 1996, the parties filed cross motions for summary judgment. On January 20, 1997, the trial court denied the pilots' motion for summary judgment and granted FedEx's motion for summary judgment. The pilots filed a motion for

reconsideration. On May 1, 1997, the trial court granted the pilots' motion for reconsideration and denied FedEx's motion for summary judgment.

On August 16, 1999, the parties submitted a joint pre-trial order, which designated, for trial purposes, ten representative plaintiffs from the consolidated cases. The following ten plaintiffs were named: Pete Camerota ("Camerota"), Dana Cockrell ("Cockrell"), Craig Covic ("Covic"), Ed Davis, Jr. ("Davis"), Charles Hohensee ("Hohensee"), Gary Lovan ("Lovan"), Steve Mairose ("Mairose"), Lance Nightwalker ("Nightwalker"), Jim Sullivan ("Sullivan"), and David Tripp ("Tripp"[, and collectively with Camerota, Cockrell, Covic, Davis, Hohensee, Lovan, Mairose, Nightwalker, and Sullivan, the "Appellants"]). The jury trial commenced on September 8, 1999. At the close of the pilots' proof on October 4, 1999, FedEx moved for a directed verdict. The trial court granted FedEx's motion for a directed verdict only with respect to the pilots' claims of good faith and fair dealing, activation pay, and passover pay. The trial court stated that it would reserve its decision on the remaining issues until after the jury made its determination.

On October 14, 1999, the jurors returned a verdict in favor of the pilots, finding specifically:

> 1) The FCH was not properly changed, excepted to, in accordance with its terms by Bulletin 89-25 to effectively suspend the application of Section 1-96 and other relevant provisions involving crewmembers' seniority rights for the purpose of the Tiger merger.
>
> 2) FedEx did violate, breach, the plaintiffs' contractual rights under Section 1-96 and other relevant provisions of the FCH involving crewmembers' seniority rights by abrogating and incorporating into the FCH the merged seniority list issued by Arbitrator Nicolau in May, 1990.
>
> 3) None of the plaintiffs were barred from recovering money damages from FedEx. The plaintiffs did sustain monetary damages. The plaintiffs did not waive their right to challenge the arbitration process and merged seniority list awarded due to any inaction, ratification, or failure to file their objections or suits for judicial relief within a reasonable time.

4) The plaintiffs sustained damages for which they should recover from August, 1989 to May, 1999.

5) Monetary damages should be awarded to each of the ten plaintiffs for damages sustained by each for breach of their FCH contract by FedEx in the following amounts:

Camerota $ 462,730.00

Cockrell $ 299,738.00

Covic $ 377,763.00

Davis $ 393,427.00

Hohensee $ 501,417.00

Lovan $ 237,249.00

Mairose $ 391,257.00

Nightwalker $ 314,000.00

Sullivan $ 430,384.00

Tripp $ 231,192.00

On October 29, 1999, FedEx filed a motion for a judgment notwithstanding the verdict and, in the alternative, a motion for a new trial. On December 15, 1999, the trial court granted FedEx's motion for a judgment notwithstanding the verdict and, in the alternative, granted a conditional new trial.

*Mairose v. Fed. Express Corp.*, 86 S.W.3d 502 , 504-508 (Tenn. Ct. App. 2001) (footnotes omitted) [hereinafter "*Mairose I*"].

In *Mairose I*, this Court was presented with several issues, including (1) whether all ten plaintiffs involved in the original trial were proper parties to the appeal, (2) whether the trial court applied the correct standard of review as to FedEx's post trial motion for a judgment notwithstanding the verdict, (3) whether the trial court erred when it granted FedEx's motion for judgment notwithstanding the verdict, and (4) whether the trial court erred when it granted FedEx's motion for a conditional new trial. *Id.* at 508. Upon review of these issues, we found that only two of the

ten original plaintiffs properly appealed the trial court's judgment notwithstanding the verdict, that the trial court applied the wrong standard of review when it granted FedEx's motion for judgment notwithstanding the verdict, that, after reviewing the record, there was material evidence in support of the jury verdict, and that the trial court's grant of a conditional new trial proper. *Id.* at 508-13. As such, we remanded the case to the chancery court for a new trial. *Id.* at 514.

On remand, the parties agreed to try the case on stipulated facts and exhibits. Prior to the trial, FedEx filed a motion for summary judgment seeking to dismiss Camerota, Cockrell, Covic, Davis, Hohensee, Nightwalker, Sullivan, and Trip, as plaintiffs in the new trial because they had not properly perfected any appeal to the original judgment notwithstanding the verdict. Thereafter, the chancery court granted the motion. On May 25, 2005, the chancery court entered its opinion on the merits of the trial and found that FedEx had not breached its contract with the plaintiffs. The chancery court ruled in the alternative that, even assuming breach, it found in the alternative that, the plaintiffs, because of their conduct, had waived any breach of contract claim they had against FedEx.

## II. ISSUES PRESENTED

Appellants have timely filed their notice of appeal and present the following issues for review:

1.  Whether the chancery court erred when it dismissed eight of the ten Appellants on the basis that they were found by this Court in its 2001 decision not to have been properly designated as parties to the appeal of the chancery court's 1999 judgment notwithstanding the verdict that was reversed on appeal;
2.  Whether the chancery court erred when it found that Appellee did not breach the FCH with Appellants;
3.  Whether the chancery court erred when it found that, even assuming breach, Appellants' breach of contract claims were barred because they waived those claims and agreed to arbitrate their seniority and did not timely file a lawsuit for breach; and
4.  Whether the chancery court erred when it awarded discretionary costs to Appellee.

For the following reasons, we affirm the decision of the chancery court finding that Appellee had not breached the FCH and affirm the decision of the chancery court dismissing eight of ten Appellants from the new trial granted by this Court in *Mairose I* as they had not properly perfected an appeal to challenge the chancery court's original judgment notwithstanding the verdict. Further, we affirm the chancery court's award of discretionary costs.

## III. STANDARD OF REVIEW

This Court reviews findings of fact by a trial court sitting without a jury under a *de novo* standard with a presumption of correctness for the findings. Tenn. R. App. P. 13(d). This Court reviews a trial court's conclusions of law under a *de novo* standard of review, affording no

presumption of correctness to those conclusions. ***Johnson v. Johnson***, 37 S.W.3d 892, 894 (Tenn. 2001) (citing *Nutt v. Champion Int'l Corp.*, 980 S.W.2d 365, 368 (Tenn. 1998)).

## IV.  DISCUSSION

### A.   *Motion to Dismiss*

On appeal, Camerota, Cockrell, Covic, Davis, Hohensee, Nightwalker, Sullivan, and Trip assert that the chancery court erred when it dismissed them as plaintiffs in the new trial granted by this Court in *Mairose I*.  Specifically, they allege that, despite their dismissal as appellants in *Mairose I* due to the fact that they had not properly perfected their appeal from the trial court's judgment notwithstanding the verdict, this Court's ruling in *Mairose I* pertaining to the remaining appellants, Mairose and Lovan, should also apply to them as their interests were interdependent. We disagree.

Generally, "[a] reversal is binding on the parties to the suit, but does not control the interests of parties who did not join, or were not made parties, to the appeal . . ."  5 C.J.S. *Appeal & Error* § 961 (1993).  However, when a non-appealing parties' "rights and liabilities and those of the parties appealing are so interwoven and dependent as to be inseparable, . . . a reversal as to one operates as a reversal as to all." *Id.*  In such case, "[w]here less than all of the coparties appeal from a severable judgment in which the interests of the parties are independent, only the part of the judgment pertaining to appellants may be reversed." *Id.* § 930; ***see also Rogers v. Bouchard***, 449 S.W.2d 431, 438 (Tenn. Ct. App. 1969).

In *Mairose I*, this Court found that Camerota, Cockrell, Covic, Davis, Hohensee, Nightwalker, Sullivan, and Trip had not properly appealed the chancery court's judgment notwithstanding the verdict. *Mairose I*, 86 S.W.3d at 510.  As such, they were dismissed from the appeal. *Id.*  Thus, the chancery court's initial ruling became final and was res judicata against the parties unless their interests were so interwoven with Mairose's and Lovan's claims so as to allow them to rely on Mairose's and Lovan's appeal from the chancery court's judgment notwithstanding the verdict.

We conclude that Camerota, Cockrell, Covic, Davis, Hohensee, Nightwalker, Sullivan, and Trip may not rely on Mairose's and Lovan's successful appeal that granted them a new trial.  In this case, Appellants filed multiple suits alleging a breach of each one's individual employment contract. *Mairose I*, 86 S.W.3d at 507.  These suits were consolidated because they arose from the same set of facts. *See id.*  Every individual plaintiff derived their cause of action from a breach of each individual plaintiff's employment contract with Appellee.  Further, in its judgment notwithstanding the verdict, the chancery court rendered a judgment in favor of Appellee against each individual plaintiff.  Thus, we find that the causes of action of Camerota, Cockrell, Covic, Davis, Hohensee, Nightwalker, Sullivan, and Trip were not so interwoven and dependent on each other as to be inseparable.  Accordingly, we affirm the decision of the chancery court as to this issue.

### B. Failure to Challenge Arbitration Award

As a preliminary matter, we first must determine whether Mairose and Lovan[1] were precluded from bringing their breach of contract claims because they did not challenge the arbitration award within the appropriate time limit.

On appeal, Appellee asserts that Mairose and Lovan are precluded from bringing their claims because they failed to properly challenge the arbitrator's award within the ninety day time limit for making an application to the court to vacate an arbitration award pursuant to section 29-5-213 of the Tennessee Code. Specifically, Appellee asserts that Mairose and Lovan had ninety days to vacate an arbitration award on any ground and that, by failing to do so, Mairose and Lovan are precluded from vacating the arbitration award. However, in the complaint, Mairose and Lovan do not challenge the validity or effectiveness of the arbitration award. Rather, Mairose and Lovan contend that when Appellee implemented the integrated master seniority list created by the arbitrator, Appellee breached its employment contract, i.e. the FCH, with Mairose and Lovan. Mairose and Lovan do not seek to vacate the integrated master seniority list; they seek damages for breach of the FCH due to Appellee's use of the integrated master seniority list.

Additionally, at oral argument, counsel for Appellee stated that the arbitrator had already decided Mairose's and Lovan's breach of contract claims. We find this statement disingenuous. During the arbitration, the arbitrator determined what he considered a fair and equitable integrated master seniority list. The arbitrator did not determine whether by doing so would violate the terms of the FCH. "An [arbitration] award is ordinarily effective as a merger or bar only with respect to those matters which have been submitted and considered, or passed on, by the arbitrators." *See* 6 C.J.S. *Arbitration* § 189 (2004). Accordingly, we conclude that Mairose's and Lovan's failure to challenge the arbitration award within the ninety day time limit for making an application to the court to vacate an arbitration award pursuant to section 29-5-213 of the Tennessee Code did not preclude them from originally bringing their action to recover for Appellee's alleged breach of the FCH.

### C. Breach of the FCH

On appeal, Mairose and Lovan argue that Appellee breached the FCH when it adopted an integrated master seniority list in abrogation of the FCH's policy on seniority. Specifically, Mairose and Lovan argue that Appellee could not amend the seniority rights provisions under the FCH's revision/bulletin process as their seniority had been earned in such a way as to become vested or accrued as opposed to amendable. The pilots contend that since their rights had vested, the provisions of the FCH governing seniority were entitled to special protection and apparently exemption from the other provisions of the FCH providing for amendment and revision of its terms.

---

[1] We note that this issue as well as the issue of breach of contract were brought on appeal by all of the Appellants. However, as Camerota, Cockrell, Covic, Davis, Hohensee, Nightwalker, Sullivan, and Trip were properly dismissed as to this action, we must consider both issues only as they apply to Mairose and Lovan.

In fact, they claim that the seniority rights they had acquired were "incapable of being divested by FedEx through any procedure in the contract." Alternatively, Mairose and Lovan assert that, even if Appellee could alter their seniority rights, the bulletin process notice of exception was not the proper vehicle by which Appellee could do so. We disagree.

Seniority rights arise only out of contract or statute, as an employee has no inherent, natural, or constitutional right to seniority in service. *Haynes v. United Chemical Workers, CIO No. 288,* 190 Tenn. 165, 170, 228 S.W.2d 101, 103 (Tenn.1950); *Trailmobile Co. v. Whirls*, 331 U.S. 40, 53, 67 S.Ct. 982, 988 (1947). Seniority does not arise from mere employment, independently of contract. *Haynes*, 190 Tenn. at 170, 228 S.W.2d at 103. Accordingly, such rights can rise no higher than the contractual relationship. 51A C.J.S. *Labor Relations* § 344 (2006). When an employee acquires seniority rights under a contract, he is bound by the limitation that the contract may be revised or abrogated, and therefore, any rights acquired under that contract would also be subject to revision or abrogation by a subsequent valid amendment thereto. *Lamon v. Georgia Southern & F. Ry. Co.*, 212 Ga. 63, 67, 90 S.E.2d 658, 662 (Ga.1955) (citing *Ford Motor Co. v. Huffman*, 345 U.S. 330 (1953); *Lewellyn v. Fleming*, 154 F.2d 211 (10th Cir. 1946); *Elder v. N.Y. Cent. R.R. Co.*, 152 F.2d 361 (6th Cir. 1945)). Thus, seniority rights are not "vested" or "earned" through years of employment such that they cannot later be terminated, lost, or bargained away. *Oddie v. Ross Gear & Tool Co., Inc.*, 305 F.2d 143, 149 (6th Cir. 1962).

The plain language of the introduction to the FCH unambiguously states that its provisions are amendable. Specifically, the FCH provides that "[t]his Handbook sets forth the work rules and policies regarding flight crewmembers" and that "these work rules and policies . . . remain in effect until formally revised." Chapter 1 is entitled "Personnel Practices" and contains subjects ranging from pilots' uniforms to discipline to pilot seniority. There are no exceptions setting forth different procedures for amending different sections of the Handbook, or guarantees that certain provisions will remain in effect. All provisions have the same status and are subject to revision in the same manner. Therefore, under the terms of the FCH, the seniority provisions at issue were subject to revision if the proper procedures were used.

Nevertheless, the pilots assumed that they had earned their seniority rankings, and therefore, their seniority rights had vested and become irrevocable. In essence, they contend that the seniority provisions in the FCH became irrevocable by virtue of their very content. They also point to FCH language stating that "seniority will begin to *accrue* on the date a pilot is employed." A similar argument was presented in *Cooper v. General Motors Corp.*, 651 F.2d 249 (5th Cir. 1981), where employees who were once accorded seniority rights by a collective bargaining agreement alleged that their rights were vested and could not be revoked by a later agreement. The court considered the employees' argument to be "devoid of support in federal labor law or contract law." *Id.* at 250. Because seniority rights owe their very existence to the parties' agreement, they do not carry permanent status, give an indefinite tenure, or extend rights created and arising under the contract, beyond its life. *Id.* at 250-51. Whether any plaintiffs had relied on the old terms in accepting positions was immaterial, because the parties had relied on a contract of limited duration, imminently

subject to renegotiation. *Id.* at 251. The seniority rights previously conferred could be taken away in a subsequent, validly made contract.

Also, in ***Tangren v. Wackenhut Services, Inc.***, 480 F.Supp. 539 (D.C.Nev. 1979), *aff'd*, 658 F.2d 705 (9th Cir. 1981), *cert. denied*, 456 U.S. 916 (1982), an existing seniority system was modified in order to reduce discrimination against minorities. In examining the nature of seniority rights, the court of appeals concluded, "it is settled that seniority rights are not vested property rights." ***Id.*** at 707. Therefore, the seniority rules at issue could be altered or amended to the detriment of some employees by a good faith agreement between the company and union. ***Id.***

In the case at bar, the pilots acquired their seniority rights pursuant to the terms of the FCH. The terms of the FCH were amendable. Therefore, they had no "vested right" to their seniority status. The rights were obtained subject to the possibility that the FCH would be amended from time to time. They did not "accrue" in the sense that they could not subsequently be lost or terminated by a properly enacted amendment.

Thus, as Mairose's and Lovan's seniority rights were not vested rights, our analysis turns to whether Appellee properly amended the FCH pursuant to its terms to allow for a change in Mairose's and Lovan's seniority rights due to Appellee's merger with Tiger.[2]

"The interpretation of a contract is a matter of law that requires a *de novo* review on appeal." ***Guiliano v. Cleo, Inc.***, 995 S.W.2d 88, 95 (Tenn. 1999) (citing *Hamblen County v. City of Morristown*, 656 S.W.2d 331, 335-336 (Tenn. 1983)).

We conclude that Appellee properly amended the FCH. The introduction of the FCH clearly stated that it could be amended through its revision process or its bulletin process. In this case, Appellee chose to amend the FCH through the bulletin process notice of exception. Although Mairose and Lovan assert that the bulletin process cannot be used to create a permanent change in the FCH, under the FCH, a notice of exception may be used to except certain provisions of the FCH for an operational need either for a *single occurrence* or for a stated period of time. In bulletin 89-25, Appellee excepted provision 1-96 so as to not apply to its seniority list merger procedures with Tiger, which was a single occurrence. Once the integration with Tiger was complete, provision 1-96 was no longer excepted, thus creating an expiration for the notice of exception. As such, we find that the bulletin process could be used as it was in this case to amend the FCH to allow for the seniority list merger procedures with Tiger.

---

[2] Generally, this Court would first have to decide if the FCH was a binding agreement between the parties so as to create a contractual right for seniority. We do not have to do so in this case because the parties have previously stipulated that the FCH was a binding agreement between them.

Thus, we find that Appellee did not breach the FCH when it implemented the integrated master seniority list created by Nicolau in arbitration. Accordingly, we affirm the chancery court's decision as to this issue.[3]

### D.    Discretionary Costs

Lastly, Appellants ask this Court to modify the chancery court's order granting discretionary costs to Appellee to exclude court reporter costs that were incurred from hearings.

Rule 54.04(2) of the Tennessee Rules of Civil Procedure states in pertinent part:

> Costs not included in the bill of costs prepared by the clerk are allowable only in the court's discretion. Discretionary costs allowable: reasonable and necessary court reporter expenses for depositions or trials, reasonable and necessary expert witness fees for depositions (or stipulated reports) and for trials, reasonable and necessary interpreter fees for depositions or trials, and guardian ad litem fees; travel expenses are not allowable discretionary costs.

Tenn. R. Civ. P. 54.04(2) (2005). Thus, while a trial judge has the discretion to award an amount for allowable expenses, he or she does not have the discretion to identify allowable expenses and may award discretionary costs only for those expenses identified in Rule 54.04(2) of the Tennessee Code. *See Miles v. Marshall C. Voss Health Care Ctr.*, 896 S.W.2d 773, 776 (Tenn. 1995); *Shahrdar v. Global Hous., Inc.*, 983 S.W.2d 230, 239-40 (Tenn. Ct. App. 1998).

Rule 54.04(2) of the Tennessee Rules of Civil Procedure allows for an award for reasonable and necessary court reporter expenses for depositions or trials. In this case, the hearings were related to the trial and were routine for the trial. As such, we find the court reporter expenses for those hearings were reasonable and necessary court reporter expenses for trial. Accordingly, we affirm the chancery court's award of discretionary costs.

---

[3] This Court is mindful that Appellee has also asserted on appeal that, if a breach occurred, Appellants failed to notify Appellee in a timely fashion that they considered Appellee's actions regarding the merger as a breach of the FCH while they still reaped the benefits of the FCH. Appellee contends that this failure constitutes a waiver of any breach by it. Because we find that there was no breach of the FCH, we need not discuss this issue.

## V. CONCLUSION

For the foregoing reasons, we affirm the decision of the chancery court finding that Appellee had not breached the FCH and affirm the decision of the chancery court dismissing eight of the ten Appellants as they did not properly perfect an appeal in *Mairose I* to the chancery court's original judgment notwithstanding the verdict. Further, we affirm the chancery court's order awarding discretionary costs to Appellee. Costs of this appeal are taxed to Appellants, Pete Camerota, Dana Cockrell, Craig Covic, Ed Davis, Jr., Charles Hohensee, Gary Lovan, Steve Mairose, Lance Nightwalker, Jim Sullivan, and David Tripp, and their surety, for which execution may issue if necessary.

_____

ALAN E. HIGHERS, JUDGE