Cedric ARNETT, et al.

v.

DOMINO'S PIZZA I, L.L.C., d/b/a Domino's Pizza, and Domino's Pizza, Inc., d/b/a Domino's Pizza.

Court of Appeals of Tennessee,
at Jackson.

Jan. 22, 2003 Session.

July 24, 2003.

Application for Permission to Appeal
Denied by Supreme Court
Dec. 22, 2003.

James W. Hodges, Jr., Regina Morrison Newman, Gregory D. Cotton and Kathleen L. Caldwell, Memphis, Tennessee, for the appellants, Cedric Arnett.

Jonathan C. Hancock and Katherine P. Griffin, Memphis, Tennessee, for the appellee, Domino's Pizza, L.L.C.

## OPINION

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY K. LILLARD, J., joined.

Ninety-two plaintiffs filed a claim against Domino's Pizza alleging violations of Tenn.Code Ann. § 4–21–101, *et seq.* (The Tennessee Human Rights Act), 42 U.S.C.2000a (Title II), 42 U.S.C. § 1981, and intentional infliction of emotional distress. Domino's Pizza removed the cause to Federal District Court, which retained the 42 U.S.C. § 1981 claim and remanded the remaining claims to the circuit court.

The trial court awarded summary judgment to Domino's Pizza and dismissed the action. We affirm in part, reverse in part, and remand for further proceedings.

Two plaintiffs in the present action, Keisha Chism (Ms. Chism) and Kenneth Moore (Mr. Moore), filed a previous suit against Domino's Pizza ("Domino's") in the United States District Court for the Western District of Tennessee, alleging discriminatory practices by Domino's in violation of 42 USC § 2000a ("Title II"), 42 USC § 1981, and the Tennessee Human Rights Act as codified at Tenn.Code Ann. § 4–21–101, *et seq.* ("THRA"). Their action also included a claim for intentional infliction of emotional distress. The district court denied Plaintiffs' motion for class certification and dismissed with prejudice the claim for intentional infliction of emotional distress. The court dismissed without prejudice the Title II and THRA claims, ruling that these claims more properly were brought in state court. The district court further ruled that Plaintiffs had established a prima facie case under § 1981. Ms. Chism and Mr. Moore non-suited their action in the district court.

In February 2001, ninety-two plaintiffs, including Ms. Chism and Mr. Moore, filed a complaint against Domino's in the Circuit Court for Shelby County. Plaintiffs are African–Americans who reside on or adjacent to Lundee Street in Memphis. Plaintiffs allege Domino's discriminates against them in violation of 42 U.S.C. § 2000a (Title II), 42 U.S.C. § 1981, and Tenn.Code Ann. § 4–21–101, *et seq.* by re-

fusing to deliver pizza to African–Americans residing in this area. Their complaint also includes a claim for intentional infliction of emotional distress. Plaintiffs additionally contend that Domino's assertion that it refuses to deliver to Lundee Street because of security concerns is merely a pretext for discriminatory behavior, since Domino's has delivered to the homes of a "female Caucasian" and "one or two other residents" of Lundee Street.[1] Plaintiffs seek injunctive relief enjoining Domino's from refusing to deliver to locations encompassing Southern Avenue and Lundee Street; $1 million each in compensatory damages; $50 million in punitive damages; pre-judgment and post-judgment interest; costs and attorney's fees.

Domino's removed the action to the United States District Court for the Western District of Tennessee on February 27, 2001. The district court granted Plaintiffs' motion to remand all but the 42 U.S.C. § 1981 action to circuit court.[2] Upon remand, in October 2001, the trial court awarded summary judgment to Domino's.[3] On November 28, 2001, a notice of appeal from the judgment of the trial court was filed in this Court, naming "Cedric Arnett, et al" as appellants. (TR vol 4 at 539)

### Issues Presented

The following issues, as we restate them, are presented for review by this Court:

(1) Whether the trial court's award of summary judgment was premature;

(2) Whether the trial court erred in determining Defendant is not a place of

---

**1.** The complaint does not indicate the race of the "one or two other residents."

**2.** The district court stayed the federal § 1981 claims pending conclusion of the state court proceedings.

**3.** We observe that although the trial court's order was characterized as one awarding

"partial" summary judgment, the court dismissed the entire action and appears to have disposed of the entire matter. We therefore consider the court's judgment a final order adjudicating all claims. This Court accordingly has jurisdiction pursuant to Tenn. R.App. P. 3(a).

public accommodation under 42 USC 2000a, *et seq.*;

(3) Whether the trial court erred in determining Defendant is not a place of public accommodation under the Tennessee Human Rights Act;

(4) Whether the trial court erred in dismissing Plaintiffs' claim for intentional infliction of emotional distress;

(5) Whether the doctrine of collateral estoppel bars Plaintiffs' claims for intentional infliction of emotional distress, where the claim was dismissed with prejudice by the district court in the previous action.

### Standard of Review

Summary judgment should be awarded when the moving party can demonstrate that there are no genuine issues regarding material facts and that it is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Byrd v. Hall,* 847 S.W.2d 208, 214 (Tenn.1993); *McCarley v. West Quality Food Serv.,* 960 S.W.2d 585, 588 (Tenn.1998). Mere assertions that the nonmoving party has no evidence does not suffice to entitle the moving party to summary judgment. *McCarley,* 960 S.W.2d at 588. The moving party must either conclusively demonstrate an affirmative defense or affirmatively negate an element which is essential to the non-moving party's claim. *Id.* If the moving party can demonstrate that the nonmoving party will not be able to carry its burden of proof at trial on an essential element, summary judgment is appropriate. *Id.*

When a party makes a properly supported motion for summary judgment, the burden shifts to the nonmoving party to establish the existence of disputed material facts or that the moving party is not entitled to summary judgment as a matter of law. *Id.; Staples v. CBL & Assocs.,* 15 S.W.3d 83, 89 (Tenn.2000). The nonmoving party cannot merely rely on the pleadings, but must demonstrate that essential elements of a claim exist by: 1) pointing to evidence that creates a factual dispute; 2) re-enforcing evidence challenged by the moving party; 3) offering additional evidence which establishes a material dispute; 4) submitting a Tenn. R. Civ. P. 56.06 affidavit explaining the need for additional time for discovery. *McCarley,* 960 S.W.2d at 588.

This Court reviews an award of summary judgment *de novo,* with no presumption of correctness afforded to the trial court. *Guy v. Mut. of Omaha Ins. Co.,* 79 S.W.3d 528, 534 (Tenn.2002). In determining whether to award summary judgment, we must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in favor of the non-moving party. *Staples,* 15 S.W.3d at 89. Summary judgment should be awarded only when a reasonable person could reach only one conclusion based on the facts and inferences drawn from those facts. *Id.* If there is any doubt about whether a genuine issue of material fact exists, summary judgment should not be awarded. *McCarley,* 960 S.W.2d at 588.

The Court's primary objective when construing a statute is to effectuate the purpose of the legislature. *Lipscomb v. Doe,* 32 S.W.3d 840, 844 (Tenn.2000). Insofar as possible, the intent of the legislature should be determined by the natural and ordinary meaning of the words used in the statute, and not by a construction that is forced or which limits or extends the meaning. *Id.* Likewise, the Court must seek to ascertain the intended scope of the statute, neither extending nor restricting the scope intended by the legislature. *State v. Morrow,* 75 S.W.3d 919, 921 (Tenn.2002). The court's interpretation must not render any part of the statute "inoperative, superfluous, void or insignifi-

cant." *Id.* (quoting *Tidwell v. Collins,* 522 S.W.2d 674, 676–77 (Tenn.1975)). Rather, courts construe statutory provisions within the context of the entire statute, giving effect to its over-arching purpose. *Merrimack Mut. Fire Ins. Co. v. Batts,* 59 S.W.3d 142, 151 (Tenn.Ct.App.2001). Courts must construe a statute reasonably, bearing in mind its objective, the harm it seeks to avoid, and the purposes it seeks to promote. *Voss v. Shelter Mut. Ins. Co.,* 958 S.W.2d 342, 345 (Tenn.Ct.App.1997). Issues of statutory interpretation are questions of law which this Court reviews *de novo,* with no presumption of correctness attached to the determination of the trial court. *Morrow,* 75 S.W.3d at 921.

### Jurisdiction of this Court

■ As an initial matter, we note that the notice of appeal filed in this Court named as appellants "Cedric Arnett, et al." This Court previously has opined that the listing of one or more named parties followed by the phrase "et al" on the notice of appeal is insufficient to satisfy the Tennessee Rules of Appellate Procedure. *See Mairose v. Federal Express Corp.,* 86 S.W.3d 502 (Tenn.Ct.App.2002)(perm.app.denied). Tenn. R.App. P. 3(f) provides:

> The notice of appeal shall specify the party or parties taking the appeal, shall designate the judgment from which relief is sought, and shall name the court to which the appeal is taken. An appeal shall not be dismissed for informality of form or title of the notice of appeal.

In *Mairose,* we noted that in 1993, the United States Congress amended Rule 3(c) of the Federal Rules of Appellate Procedure following the United States Supreme Court's ruling in *Torres v. Oakland Scavenger Co.,* 487 U.S. 312, 108 S.Ct. 2405, 101 L.Ed.2d 285 (1988). *Mairose,* 86 S.W.3d at 510. We noted that the *Torres*

court held that the use of the phrase "et al" was insufficient to provide notice of appeal in accordance with the Fed. R.App. P. 3(c) as it then existed. *Id.* at 509 (citing *Torres,* 487 U.S. 312 at 314, 108 S.Ct. 2405, 101 L.Ed.2d 285). In *Town of Carthage v. Smith County,* this Court adopted the United States Supreme Court's decision in *Torres,* observing that Tenn. R.App. P. 3(f) was identical, in pertinent part, to the pre–1993 amendment Fed. R.App. P. 3(c). *Id.* (citing *Town of Carthage v. Smith County,* No. 01–A–01–9308–CH00391, 1995 WL 92266 at *3 (Tenn.Ct.App. Mar.8, 1995)).

Although Congress amended the federal rules, effectively overruling the holding of the Supreme Court in *Torres,* Tenn. R.App. P. 3(f) has not been amended similarly. *Mairose,* 86 S.W.3d at 510. Tennessee accordingly adheres to the reasoning of *Torres:* all appellants must be listed by name on the notice of appeal. This Court does not have jurisdiction over a person presumptively included in the phrase "et al" but not specifically named as an appellant on the notice of appeal. *Id.; see also, Spectra Plastics, Inc. v. Nashoba Bank,* 15 S.W.3d 832, 840 (Tenn.Ct.App.1999)(perm.app.denied); *McGaugh v. Galbreath,* 996 S.W.2d 186, 189 (Tenn.Ct.App.1998)(perm.app.denied). In the present case, therefore, our jurisdiction is limited to the appeal of Cedric Arnett (Mr. Arnett).

### Whether the Award of Summary Judgment was Pre-mature

■ Mr. Arnett cites *Craven v. Lawson,* 534 S.W.2d 653, 655 (Tenn.1976), in support of his contention that the trial court's award of summary judgment was pre-mature because no discovery had been conducted in the case and Domino's had not yet responded to Plaintiffs' interrogatories and requests for production. Plaintiffs' response to Domino's motion for partial

summary judgment does not include this contention, however. Further, Plaintiffs failed to file any affidavit with the court explaining the need for additional time for discovery. *See McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998).

Additionally, we find Mr. Arnett's reliance on *Craven* to be misplaced. In *Craven*, the court noted that if the party opposing the motion for summary judgment had been denied the opportunity to file affidavits or take depositions without a thirty-day interval after the motion was filed, the cause should be remanded to cure such error. Domino's motion for summary judgment was filed in July 2001. Mr. Arnett had ample opportunity to file affidavits establishing the need for additional time for discovery before the trial court issued its order in October 2001. Further, as the trial court based its determinations on issues of law, and in light of our analysis of these issues, we do not believe additional time for discovery would have served any useful purpose. We accordingly disagree with Mr. Arnett's assertion that the order of the trial court was pre-mature in this case.

### Whether Domino's is a Place of "Public Accommodation" Under 42 U.S.C. § 2000a

42 U.S.C. § 2000a provides, in pertinent part:

(a) Equal access

All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination or segregation on the ground of race, color, religion, or national origin.

(b) Establishments affecting interstate commerce or supported in their activities by State action as places of public accommodation; lodgings; facilities principally engaged in selling food for consumption on the premises; gasoline stations; places of exhibition or entertainment; other covered establishments.

Each of the following establishments which serves the public is a place of public accommodation within the meaning of this subchapter [42 U.S.C.S. §§ 2000a–2000a–6] if its operations affect commerce, or if discrimination or segregation by it is supported by State action:

. . . .

(2) any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises, including, but not limited to, any such facility located on the premises of any retail establishment; or any gasoline station[.]

The question of whether a facility is a "place of public accommodation" within the meaning of § 2000a is a question of law. *See United States v. Richberg*, 398 F.2d 523, 526 (5th Cir.1968)(stating: determination of whether a facility is a "club" for purposes of Title II is a question of law once underlying facts have been determined). This determination must conform to the purposes of the statute as constructed by Congress. *Id.*

Domino's indisputably is principally engaged in selling food which is ready for consumption and which is available for take-out or delivery. Domino's asserts that it is not a place of public accommodation within the meaning of § 2000a, however, because it does not sell food which is consumed *on the premises*. Domino's cites the following cases, none of which is binding upon this Court, in support of this proposition: *Marks v. City of Warren*, 1999 U.S. Dist. LEXIS 17990 (E.D.Mich.

1999); *Boykin v. Domino's Pizza Inc.,* No. S 00–2564 (D.Md. Nov. 27, 2000); *Carrington v. Lawson's Milk Co.,* 815 F.2d 702 (6th Cir. March 6, 1987); *Halton v. Great Clips, Inc.,* 94 F.Supp.2d 856, 861 (N.D. Ohio, 2000).

While the *Marks* court observation brought to our attention by Domino's that "it was not the intent of Congress to make every public place an establishment or place of public accommodation" is not at dispute here, it is not particularly helpful to the determination of whether Domino's should be so considered. The question in *Marks* was whether a police station was a place of public accommodation under § 2000a. The *Marks* court determined it was not. *Marks,* 1999 U.S. Dist. LEXIS 17990 at *25.

In an unreported memorandum opinion, the court in *Boykin* opined Domino's was not a place of public accommodation under § 2000a, but was "more analogous to a convenience store[.]" However, the issue in *Boykin,* was not Domino's refusal to serve or deliver to *some* customers, but a policy of a particular store not to accept *any* take-out orders over the telephone. The Domino's store in *Boykin* did not refuse to deliver to the plaintiff, nor did it refuse to fill plaintiff's take-out order if placed in person. The issue in the case before us is not whether Domino's may refuse to deliver at all. The issue here is whether Domino's may refuse to deliver to *some* customers.

In *Carrington v. Lawson's Milk Co.,* the court determined that the defendant convenience store was not a place of public accommodation within the meaning of § 2000a. The *Lawson* court opined:

For a facility such as Lawson's to come under the prohibitions of Title II, it must be "principally engaged in selling food for consumption on the premises." 42 U.S.C. § 2000a(b)(2). In *Newman v.*

*Piggie Park Enter.,* 377 F.2d 433 (4th Cir.1967) (en banc), modified on other grounds, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968) the Fourth Circuit considered the meaning of the word "public accomodation" [sic] in terms of food service establishments:

The sense of this plan of coverage is apparent. Retail stores, food markets, and the like were excluded from the Act for the policy reason that there was little, if any, discrimination in the operation of them. Negroes have long been welcomed as customers in such stores. See 110 Cong. Rec. 6533 (1954) (remarks of Senator Humphrey).

*Id.* at 435–36, 88 S.Ct. 964. The Lawson's "convenience store" was not a "facility principally engaged in selling food for consumption on the premises," but rather, a place where food products were sold principally for off-premises consumption. Lawson's was a place "where food *service* was incidental to some other business...." *Newman,* 377 F.2d at 436 (emphasis added).

*Carrington v. Lawson's Milk Co.,* 815 F.2d at 702 .

Unlike Lawson's Milk Company, Domino's is not a convenience store to which food service is incidental to some other business. Food service is Domino's only business. Thus we do not find the *Carrington* case to be particularly helpful to our determination here. Likewise, the Court's determination in *Halton v. Great Clips, Inc.,* 94 F.Supp.2d 856 (N.D. Ohio April 20, 2000), that a hair salon was not a place of public accommodation is not particularly relevant in this instance.

The United States Supreme Court observed in *Daniel v. Paul* that the primary purpose of Title II is "to move the daily affront and humiliation involved in discriminatory denials of access to facilities osten-

sibly open to the general public." *Daniel v. Paul*, 395 U.S. 298, 307–8, 89 S.Ct. 1697, 23 L.Ed.2d 318 (1969)(quoting H.R.Rep. No. 914, 88th Cong., 1st Sess., 18). Thus the *Daniel* court held that a recreational swim club was a "place of entertainment" within the meaning of Title II. *Id.* The *Daniel* court also determined that a snack bar located on the swim club grounds was a place of public accommodation as defined by the Title. *Id.* at 304, 89 S.Ct. 1697. The Court held, "[c]learly, the snack bar is 'principally engaged in selling food for consumption on the premises.'" *Id.* Further, the Court held that the snack bar's status as an establishment covered by Title II automatically brought the entire swim club facility within the ambit of the Title. *Id.* at 306, 89 S.Ct. 1697.

In *Newman v. Piggie Park*, the Fourth Circuit determined that drive-in establishments selling food ready for consumption are places of public accommodation covered by Title II. *Newman v. Piggie Park Enter., Inc.* 377 F.2d 433 (4th Cir. 1967)(aff'd as modified by 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968)). Piggie Park operated drive-in eating establishments where customers placed their orders through an intercom. *Id.* at 434. Piggie Park then delivered ready to eat food to the customers, who waited in their cars. *Id.* Some of the customers ate on the premises while in their cars, others left before eating. *Id.* Piggie Park's facilities did not have tables or chairs or seating areas where customers might eat. *Id.* The Fourth Circuit determined that the emphasis of § 2000a was on the word "food," not on whether food which was served ready for consumption actually was eaten at the establishment. *Id.* at 436. The court opined that had Congress intended the phrase "for consumption on the premises" to mean that the ready to eat food had to be in fact consumed on the premises, it would have utilized the phrase "actually

consumed on the premises." *Id.* at 435. The Fourth Circuit observed:

> The Congress clearly meant to extend its power beyond the ordinary sit-down restaurant and just as clearly did not undertake to legislate with respect to grocery type food stores which would have been covered but for the modifying phrase 'for consumption on the premises. Thus, food stores are not covered, but stores (or facilities) that sell food of a particular type, i.e., ready for consumption on the premises, are covered. What the customers actually do with the ready-to-eat food was not the concern of the Congress—whether they eat it then and there or subsequently or elsewhere.

*Id.* at 436.

According to the Fourth Circuit in *Piggie Park*, the test for determining whether an establishment is a place of public accommodation under § 2000a is whether the food it serves is *fit* for consumption while it is on the premises. *See* 10 A.L.R. Fed. 220 §§ 2, 8 (1972). We observe, however, that the establishment in *Piggie Park* was a drive-in restaurant which served food *for* consumption on its premises, and not just *fit* for consumption on its premises. The Piggie Park drive-ins clearly fell within the ambit of § 2000a.

The United States Supreme Court granted certiorari in *Piggie Park* to determine the counsel fee provisions of Title II. *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 401, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). It modified the judgment of the Fourth Circuit on the attorney's fee issue, and affirmed the judgment that drive-in restaurants are covered by Title II. *Id.* at 403, 88 S.Ct. 964. The Supreme Court did not address the lower court's reasoning that § 2000a should be read to include all establishments serving food *fit* for consumption on the premises.

We agree with the Fourth Circuit that in drafting § 2000a Congress could have utilized the phrase "actually consumed on the premises." We observe, however, that Congress just as readily could have utilized the phrase "food fit for consumption on the premises." Congress *could* have worded the section in any number of ways. In enumerating the kinds of establishments to be included in § 2000a, however, Congress chose the phrase: "facilities principally engaged in selling food for consumption on the premises." 42 U.S.C. § 2000a.

■ We believe that the Fourth Circuit's construction of § 2000a stretches it beyond the natural and ordinary meaning of the words chosen by Congress. Clearly, Congress intended to eliminate racial segregation in eating places. Such places include traditional eat-in restaurants, drive-in facilities, snack bars, and other facilities where food is consumed. It is not within the province of this Court, however, to expand upon the intent of Congress as reflected by the words Congress chose to employ. *See Lipscomb v. Doe*, 32 S.W.3d 840, 844 (Tenn.2000); *Daniel v. Paul*, 395 U.S. at 307, 89 S.Ct. 1697 (opining: Title II coverage is as broad as the "natural reading of its language would call for[.]"). Unlike the snack bar in *Daniel* or the drive-in restaurants in *Piggie Park*, Domino's Pizza clearly is not "principally engaged in selling food for consumption on the premises."

We respectfully disagree with the Fourth Circuit that Congress intended the statute to read "food fit for consumption" when Congress utilized the phrase "for consumption on the premises." In the absence of an adoption of the Fourth Circuit's reasoning by the Supreme Court, this Court is not bound by the reasoning of the Fourth Circuit where that reasoning was not essential to the court's judgment. Domino's is not an establishment whose principal activity is selling food for consumption on the premises. We accordingly affirm summary judgment for Domino's on this issue of law.[4]

### Whether Domino's is a place of "public accommodation" under the Tennessee Human Rights Act

■ The purpose of the Tennessee Human Rights Act as codified at Tenn.Code Ann. § 4–21–101, *et seq.*, is to:

(1) Provide for execution within Tennessee of the policies embodied in the federal Civil Rights Acts of 1964, 1968 and 1972, the Pregnancy Amendment of 1978, and the Age Discrimination in Employment Act of 1967, as amended;

(2) Assure that Tennessee has appropriate legislation prohibiting discrimination in employment, public accommodations and housing sufficient to justify the deferral of cases by the federal equal employment opportunity commission, the department of housing and urban

---

4. We note that in *Robinson v. Power Pizza, Inc.*, plaintiffs commenced an action under Title II alleging discriminatory practices by Power Pizza, which operated a Domino's Pizza franchise. *Robinson v. Power Pizza, Inc. d/b/a Domino's Pizza*, 993 F.Supp. 1462 (M.D.Fla., 1998). Plaintiffs in *Power Pizza* alleged that the franchise discriminated against African–Americans by refusing to deliver ready for consumption food to a predominantly African–American area known as American Beach. *Id.* at 1463. The court

adjudicated the Title II complaint, finding plaintiffs had made a prima facie case of discrimination and granting plaintiffs a preliminary injunction enjoining Power Pizza from refusing to deliver to American Beach. *Id.* 1466. The issue of whether the Domino's franchise owned by the defendant, Power Pizza, was a place of "public accommodation" as defined by 42 U.S.C. § 2000a(b) was not raised, however, and the court adjudicated the cause accordingly. *Id.* at 1465, fn. 2.

development, the secretary of labor and the department of justice under those statutes;

(3) Safeguard all individuals within the state from discrimination because of race, creed, color, religion, sex, age or national origin in connection with employment, public accommodations, and because of race, color, creed, religion, sex or national origin in connection with housing;

(4) Protect their interest in personal dignity and freedom from humiliation;....

Tenn.Code Ann. § 4–21–101(1998).

In order to achieve this purpose, the THRA provides:

Except as otherwise provided in this chapter, it is a discriminatory practice for a person to deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of a place of public accommodation, resort or amusement, as defined in this chapter, on the grounds of race, creed, color, religion, sex, age or national origin.

Tenn.Code Ann. § 4–21–501 (1998).

As defined by Tenn.Code Ann. § 4–21–102(15) (1998),

"[p]laces of public accommodation, resort or amusement" includes any place, store or other establishment, either licensed or unlicensed, which supplies goods or services to the general public or which solicits or accepts the patronage or trade of the general public, or which is supported directly or indirectly by government funds, except that:

(A) A bona fide private club is not a place of public accommodation, resort or amusement if its policies are determined solely by its members; and

(B) Its facilities or services are available only to its members and their bona fide guests[.]

Domino's asserts that since the Tennessee Act embodies the policies of the federal Civil Rights Acts of 1964 and 1968, including Title II, and since it is not a "place of public accommodation" under Title II of the federal Acts, it accordingly is not a place of public accommodation under the THRA. We disagree.

We note as an initial matter that the language of the THRA, like many state acts prohibiting discriminatory practices, is broader than the federal acts. *See generally, Welsh v. Boy Scouts of America,* 787 F.Supp. 1511 (E.D.Ill.1992); *James v. Team Washington,* 1997 WL 633323, No. Civ.A.97–00378 TAF (D.D.C. Oct. 7, 1997)(holding: Domino's a place of public accommodation under the D.C. Human Rights Act). Domino's cites *Phillips v. Interstate Hotels Corp.,* 974 S.W.2d 680 (Tenn.1998), for the proposition that the courts of this State are limited in their interpretation of the THRA by the interpretation of Title II. In support of this proposition, Domino's quotes the Tennessee Supreme Court in *Phillips* as stating: "[a]lthough the language differs slightly, it is clear that the legislature intended the THRA to be coextensive with federal law." *Phillips,* 974 S.W.2d at 683. However, the *Phillips* court did not end its analysis with this suggested limitation on the courts of this State to interpret the statutes of Tennessee. The Supreme Court continued its analysis, opining that the purpose of the THRA was to "provide for the execution of the *policies* embodied in the Federal Civil Rights Acts." *Id.* at 684 (emphasis added); *see Austin v. Shelby County Gov't,* 3 S.W.3d 474, 480 (Tenn.Ct.App.1999)(perm.app.denied). The *Phillips* court further added, "[w]e, therefore, may look to federal interpreta-

tion of Title VII [of the federal Civil Rights Act] for guidance in enforcing our own anti-discrimination statute. *We, however, are neither bound by nor limited by federal law when interpreting the THRA.* *Id.* (emphasis added).

 Domino's reliance on one sentence drawn from *Phillips* must fail for two reasons. First, although the policies of the federal Acts and the THRA are coextensive, i.e., to prohibit discrimination in, *inter alia,* places of public accommodation, the reach of the THRA is in no way limited by the constraints found in the federal Acts.[5] Second, the courts of this State are not bound by the federal courts, nor is our interpretation of this State's statutes limited by federal interpretation of federal statutes. *Id.*

Domino's indisputably is an establishment which supplies goods and services to the general public. Further, it both solicits and accepts the patronage of the general public. The intent of the General Assembly to prohibit discrimination, as clearly articulated in the THRA, combined with the plain and unambiguous definition of "places of public accommodation" found in Tenn.Code Ann. § 4–21–102(15), can result in only one conclusion. Domino's is a place of public accommodation under the THRA. We accordingly reverse the order of the trial court on this issue.

### The Claim for Intentional Infliction of Emotional Distress

 In Tennessee, there are three essential elements to a claim for intentional infliction of emotional distress: the defendant's conduct must be intentional or reckless; the conduct must be so outrageous as not to be tolerable by civilized society; the conduct must result in serious mental injury. *Bain v. Wells,* 936 S.W.2d 618, 622 (Tenn.1997). Liability for mental distress injuries "does not extend to mere insults, indignities, threats, annoyances, petty oppression or other trivialities." *Id.* (quoting *Medlin v. Allied Inv. Co.,* 217 Tenn. 469, 398 S.W.2d 270, 274 (1966)). The courts of this State have acknowledged that there is no perfect or exact legal standard by which to measure whether conduct is so extreme as to be intolerable. *See id.* However, Tennessee has adopted and applied the threshold standard described in the Restatement (Second) of Torts:

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.'

*Id.* at 623 (quoting *Medlin,* 217 Tenn. at 479, 398 S.W.2d at 274 (quoting with approval Restatement (Second) of Torts § 46 comment d (1965))). The court must apply this standard to determine "whether the

---

**5.** The most obvious example being that the application of the federal Act is limited, as a Constitutional necessity, to places of public accommodation having an affect on interstate commerce.

defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery . . ." *Id.* (quoting *Medlin,* 398 S.W.2d at 274). Thus a plaintiff seeking damages for intentional infliction of emotional distress must meet an "exacting standard." *Miller v. Willbanks,* 8 S.W.3d 607, 614 (Tenn.1999).

■ We agree with the trial court that the conduct alleged in this case does not rise to being reasonably regarded as so extreme and outrageous as to permit recovery for intentional infliction of emotional distress. Certainly, discrimination based on race is insulting and humiliating. The discouragement of such discriminatory behavior is at the very core of the federal Civil Rights Acts and the Tennessee Human Rights Act. However, discriminatory conduct does not automatically give rise to the imposition of liability for intentional infliction of emotional distress. If it did, virtually every action brought under these statutes would include an intentional infliction of emotional distress claim.

■ Equally determinative, this record is devoid of any evidence of the severe mental injury which must be caused by the defendant's outrageous conduct for recovery for intentional infliction of emotional distress. As the Tennessee Supreme Court has observed, "some degree of transient and trivial emotional distress is a part of the price of living among people." *Miller,* 8 S.W.3d at 615 FN 4. Thus recovery for intentional infliction of emotional

distress is limited to mental injury which is "so severe that no reasonable [person] would be expected to endure it." *Id.* (*quoting* with approval Restatement (Second) of Torts, § 46 comment j (1965)). In light of the foregoing, we affirm summary judgment on this issue. The issue of collateral estoppel accordingly is pretermitted.

### Conclusion

We affirm summary judgment for Dominos's with respect to the claim for intentional infliction of emotional distress. We hold that Domino's is not a place of public accommodation under 42 U.S.C. § 2000a and affirm summary judgment for Domino's on this issue. We hold that Domino's is a place of public accommodation under the Tennessee Human Rights Act as codified at Tenn.Code Ann. § 4–21–101, *et seq.* We reverse the trial court's grant of summary judgment on this issue.

This case is remanded for further proceedings in accordance with the burden shifting analysis adopted by the Tennessee Supreme Court in *Phillips v. Interstate Hotels Corp.,* 974 S.W.2d 680, 684 (Tenn. 1998).[6] Costs of this appeal are taxed one-half to Domino's Pizza, LLC, and one-half to Cedric Arnett and his surety, for which execution may issue if necessary.

---

**6.** In order to maintain a cause of action for discrimination by a place of public accommodation, the plaintiff bears the burden of establishing a prima facie case. *Phillips,* 974 S.W.2d at 684 (adopting the burden shifting analysis of the federal courts as employed in *Texas Dep't of Comm. Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). In order to show a prima facie case, the plaintiff must show that he is a member of a protected class; that the defendant operated a place of public accommodation; that the

plaintiff has been denied access to the place of public accommodation. *Id.* The burden of production then shifts to the defendant to assert a legitimate, non-discriminatory reason for its actions. *Id.* The burden then shifts back to the plaintiff to show that the explanation offered by the defendant was a pretext for discrimination. *Id.* Although this burden of production shifts between the parties, the plaintiff bears the ultimate burden of persuasion. *Id.*