# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
February 17, 2009 Session

## JAMIE C. RUNIONS v. TENNESSEE STATE UNIVERSITY, ET AL.

**Appeal from the Circuit Court for Davidson County**
**No. 08C1159      Barbara N. Haynes, Judge**

---

**No. M2008-01574-COA-R3-CV - Filed July 6, 2009**

---

A woman enrolled in a nursing program at Tennessee State University received a grade of D in one of her courses and was dropped from the program. She appealed to the provost of the university, who led her to believe that she had been, or would be, reinstated. She learned that this was not so when she returned to class and the instructor physically escorted her from the classroom. She brought suit against the university and four of its employees, including the provost, asserting claims of battery, conspiracy to commit battery, and intentional infliction of emotional distress. The trial court dismissed her suit for failure to state a claim upon which relief can be granted. *See* Tenn. R. Civ. P. 12.02(6). We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

PATRICIA J. COTTRELL, P.J.,M.S., delivered the opinion of the court, in which FRANK G. CLEMENT, JR. and RICHARD H. DINKINS, JJ., joined.

Mark J. Downton, Nashville, Tennessee, for the appellant, Jamie C. Runions.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; Jay C. Ballard, Assistant Attorney General, for the appellees, Tennessee State University, Betty Wilson, Bernadeen Fleming, Ph.D., Barbara Buchanan Covington, Ph.D, Dr. Robert Hampton.

## MEMORANDUM OPINION[1]

---

[1]Tenn. R. Ct. App. 10 states:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

# I. BACKGROUND

The following account is taken directly from the complaint of Jamie Runions, the plaintiff in this case. Ms. Runions was a student at Tennessee State University (TSU). In the Fall of 2006, she began a course of study at that institution in a program leading to a Bachelor of Science degree in Nursing. She successfully completed her first year in the program and began her second year in the Fall of 2007. One of the required courses that semester was in Maternal Child Nursing (MCN).

According to Ms. Runions' complaint, the class was not conducted in the way the students were told it would be, and the final exam included material that was not taught in class. Ms. Runions received a grade of "D" in the course, missing the next highest grade by less than one percentage point. Under the rules of the program, any grade of "D" or lower is considered to be insufficient progress and is grounds for removal from the program.

Ms. Runions alleges that in the same semester she also took her HESI- Comprehensive Nursing Exam part 1, and that she successfully passed it. She further states that according the student handbook, her successful completion of that exam should have resulted in the addition of 1% to her final MCN course grade. Nonetheless, program administrators informed Ms. Runions that because of her grade in the MCN class, she would be removed from the program.

Following the procedures set out in the student handbook, Ms. Runions appealed, first to her professor, then to Dr. Bernadine Fleming, interim dean of the School of Nursing, and to Dr. Barbara Covington, director of the B.S.N. program, then to the Student Appeals Council. Ms. Runions was informed that her appeal had been denied. She then appealed to Dr. Robert Hampton, the Provost and Vice President of Student Affairs at TSU.

Dr. Hampton reviewed the materials Ms. Runions gave him and conferred with Dr. Fleming and other representatives of the School of Nursing. He then reportedly informed Ms. Runions by phone that her appeal had been granted and he sent an e-mail to Dr. Fleming on January 16, 2008, stating that "there is a compelling case for her reinstatement into the program."

The following day was the first day of classes for the Spring Semester. In the words of Ms. Runions' complaint,

> After Plaintiff entered the classroom, [instructor Betty Wilson] inquired as to why she was there and then physically grabbed Plaintiff by the arm. She then pushed Plaintiff on her back while clutching Plaintiff's arm to forcibly remove Plaintiff from the classroom. Plaintiff protested that her appeal had been granted to no avail. Fleming and Covington had instructed Ms. Wilson to prevent Plaintiff from attending class.

Ms. Runions immediately contacted Dr. Hampton, who again assured her that he would take care of the situation. However, Ms. Runions alleged that Dr. Fleming and Dr. Covington

subsequently met with Dr. Hampton in private, who then reversed his decision in a letter dated January 30, 2008, without stating any reason. Ms. Runions claims that the events described above have caused her to suffer great mental anguish, embarrassment and emotional distress, and that she has had to undergo professional counseling as a result.

On April 15, 2008, Ms. Runions filed the instant complaint in the Circuit Court of Davidson County. Tennessee State University was named as a defendant, as were Ms. Wilson, Dr. Covington, Dr. Fleming and Dr. Hampton. Ms. Runions asked the court to award her both compensatory and punitive damages

The defendants filed a motion to dismiss the complaint under Tenn. R. Civ. P. 12.02(1), (3), and (6) for lack of jurisdiction over the subject matter, improper venue, and failure to state a claim upon which relief can be granted. On June 6, 2008, the trial court conducted a hearing on the defendants' motion to dismiss. The court subsequently entered an order declaring that the motion was well-taken, and it dismissed the complaint. This appeal followed.

## II. ANALYSIS

### A. THE STANDARD OF REVIEW

Although the final order in this case did not explain the court's reasoning or which section or sections of Rule 12.02 it found applicable, questions of jurisdiction and venue clearly apply primarily to Ms. Runions' claims against the University and against its employees acting in their official capacity. Those claims included breach of contract, promissory estoppel, fraud, and violation of the Tennessee Human Rights Act. Under the doctrine of sovereign immunity, the state and its agencies (such as TSU) may not be sued in its own courts except under the conditions and in the manner established by the legislature. *Hawks v. City of Westmoreland*, 960 S.W.2d 10, 14 (Tenn. 1997). As a practical matter, that means that jurisdiction over some of the claims raised by Ms. Runions lay not in the circuit court, but in the Board of Claims or the Division of Claims Administration. *See* Tenn. Code Ann. § 9-8-101 et seq.

Ms. Runions does not challenge the trial court's dismissal of her claims against the University. She only appeals its dismissal of her claims for battery, conspiracy, and intentional infliction of emotional distress against Wilson, Covington and Fleming, "acting in their individual capacities." She is not pursuing any claim against Dr. Hampton.

The defendants argue that even though Ms. Runions has tried to frame her appeal in such a way as to avoid the immunity generally enjoyed by state employees, they are nonetheless entitled to absolute immunity under Tenn. Code Ann. § 9-8-307(h) for the acts complained of. That statute declares that "[s]tate officers and employees are absolutely immune from liability for acts or omissions within the scope of the officer's or employee's office or employment, except for willful, malicious, or criminal acts or omissions or for acts or omissions done for personal gain."

-3-

Ms. Runions acknowledges the relevance of Tenn. Code Ann. § 9-8-307(h), and she concedes that determining course grades and eligibility for academic programs is within the scope of employment of University teachers and administrators. She argues, however, that she is not appealing her expulsion from the nursing program but only the objectionable manner in which she was treated when she was escorted from the classroom. She also concedes that the acts she complains of were not in violation of criminal law and that there is no evidence that the defendants stood to gain anything personally from their actions. She argues, however, that they acted in a willful and malicious manner towards her and, therefore, that they are not entitled to immunity for their actions under Tenn. Code Ann. § 9-8-307(h).

Assuming, *arguendo*, that her arguments are valid and that the three defendants are therefore not entitled to absolute immunity, the trial court's dismissal of her complaint must then be deemed to have been based on the defendants' Tenn. R. Civ. P. 12.02(6) motion to dismiss for failure to state a claim upon which relief can be granted. The standard for a decision on such a motion, and the standard of review for such a decision, are both well-settled. Such a motion:

> tests only the legal sufficiency of the complaint, not the strength of a plaintiff's proof. Such a motion admits the truth of all relevant and material averments contained in the complaint, but asserts that such facts do not constitute a cause of action. In considering a motion to dismiss, courts should construe the complaint liberally in favor of the plaintiff, taking all allegations of fact as true, and deny the motion unless it appears that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief. *Cook v. Spinnaker's of Rivergate, Inc.*, 878 S.W.2d 934, 938 (Tenn. 1994). In considering this appeal from the trial court's grant of the defendant's motion to dismiss, we take all allegations of fact in the plaintiff's complaint as true, and review the lower courts' legal conclusions *de novo* with no presumption of correctness. Tenn. R. App. P. 13(d); *Owens v. Truckstops of America*, 915 S.W.2d 420, 424 (Tenn. 1996); *Cook, supra*.

*Stein v. Davidson Hotel Co.*, 945 S.W.2d 714, 716 (Tenn. 1997); *See also Dobbs v. Guenther*, 846 S.W.2d 270, 273 (Tenn. Ct. App. 1992).

### B. BATTERY

Ms. Runions has asserted a battery claim against Ms. Wilson only, as none of the other defendants are alleged to have physically touched her. A battery occurs when an individual intentionally inflicts an unlawful or offensive physical contact upon the person of another without the consent of the victim. *See, generally,* 6 AM.JUR 2D, *Assault and Battery*, § 3 (1999).

In her complaint, Ms. Runions describes the alleged battery as follows: "[Ms. Wilson] physically grabbed Plaintiff by the arm. She then pushed Plaintiff on her back while clutching Plaintiff's arm to forcibly remove Plaintiff from the classroom." Clearly, Ms. Wilson intentionally

made physical contact with Ms. Runions, which was at the very least unwelcome, since Ms. Runions desired to stay in the class.

However, not every physical contact that is unconsented to is so offensive that it amounts to a battery. In one case involving battery and other intentional torts, this court observed that "[o]ffensive contact is contact that infringes on a reasonable sense of personal dignity ordinarily respected in a civil society." *Doe v. Mama Taori's Premium Pizza,* No. M1998-00992-COA-R9-CV, 2001 WL 327906 at *4 (Tenn. Ct. App. April 5, 2001) (no Tenn. R. App. P. 11 application filed). The question then is whether Ms. Wilson infringed on Ms. Runions' reasonable sense of personal dignity when she removed her from the classroom.

As the defendants point out, "court officers, firemen, police officers, security officers, business owners, ushers, teachers and the like, all are expected to touch people at times in order to direct their movements," and they conclude that "[p]eople implicitly consent to this contact when they enter courthouses, businesses and classrooms." We agree, although we do not believe that such consent extends to any and all contact, but only to "reasonable contact" necessary to accomplish a legitimate official or business purpose.

Ms. Wilson apparently believed that Ms. Runions was not supposed to be in the classroom. While Ms. Runions alleges that Ms. Wilson touched her back and her arm in order to impel her from the classroom, she does not allege any physical injury or consequence from that contact, instead claiming only that she was embarrassed to be escorted out of the classroom in the way that she was. We conclude that the touching alleged and described by Ms. Runions, placed in context, was not so offensive as to rise to the level of an actionable civil battery.

## C. Conspiracy

A civil conspiracy is defined as a "combination between two or more persons to accomplish by concert an unlawful purpose, or to accomplish a purpose not in itself unlawful by unlawful means." *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 67 (Tenn. 2001) *(quoting Chenault v. Walker,* 36 S.W.3d 45, 52 (Tenn. 2001)).

Although Ms. Runions is deeply aggrieved about her expulsion, she does not argue on appeal that the defendants conspired among themselves to accomplish an unlawful purpose when they decided to remove her from the nursing program. She claims, rather, that they used unlawful means to accomplish an otherwise lawful purpose.

In her complaint, Ms. Runions alleges that Dr. Covington and Dr. Fleming had instructed Ms. Wilson to prevent her from attending class. While this may very well be true, it does not, standing alone, amount to any kind of conspiracy. Ms. Runions therefore attempts to expand upon this allegation by stating that the two administrators conspired with Ms. Wilson to keep her out of the classroom "by any means necessary."

Ms. Runions does not present any specific facts to support such an accusation, nor does she actually allege that Ms. Wilson was instructed to commit a battery on Ms. Runions. Although the trial court is instructed in ruling on a Rule 12.02 motion to construe the complaint liberally in favor of the plaintiff and to take all allegations of fact as true, the court should not "credit conclusory allegations or draw farfetched inferences from the facts alleged by a plaintiff." *Chenault v. Walker*, 36 S.W.3d at 56.

Perhaps even more important for our review of the conspiracy claim is the principle that no liability can arise under a theory of civil conspiracy unless the underlying conduct that the conspiracy is directed towards is itself wrongful. *Levy v. Franks,* 159 S.W.3d 66, 82 (Tenn. Ct. App. 2004); *Greene v. Brown & Williamson Tobacco Corp.*, 72 F. Supp.2d 882, 887 (W.D. Tenn. 1999).

> It is a general rule that a conspiracy cannot be made the subject of a civil action, unless something is done which, without the conspiracy, would give a right of action. The damage done is the gist of the action, not the conspiracy. . . . [T]he simple act of conspiracy does not furnish a substantive ground of action.

*Levy v. Franks,* 159 S.W.3d at 82 (quoting *Tenn. Publishing Co. v. Fitzhugh,* 52 S.W.2d 157, 158 (1932)). To put it in specific terms, if a claim for battery fails, then a claim of conspiracy to commit battery must also fail, for "[i]t cannot be that a conspiracy to do a thing is actionable where the thing itself would not be." *Forrester v. Stockstill*, 869 S.W.2d 328, 330 (Tenn. 1994); *Felts v. Paradise*, 158 S.W.2d 727, 729 (Tenn. 1942); *Levy v. Franks,* 159 S.W.3d at 82.

Ms. Runions has conceded that it was not unlawful for the defendants to expel her from the nursing program or to remove her from the classroom. She has only claimed that the manner of her removal was unlawful since it amounted to a civil battery. Since we have found that Ms. Wilson did not commit a battery upon the person of Ms. Runions, there is no foundation for the claim of conspiracy to commit battery.

### D. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In Tennessee, the tort of intentional infliction of emotional distress is synonymous with the tort of outrageous conduct. *Lyons v. Farmers Ins. Exchange*, 26 S.W.3d 888, 893 (Tenn. Ct. App. 2000) *Johnson v. South Central Human Resource Agency*, 926 S.W.2d 951, 952 (Tenn. Ct. App. 1996). "Intentional infliction of emotional stress and outrageous conduct are simply different names for the same cause of action which has three essential elements: (1) the conduct complained of must be intentional or reckless, (2) it must be so outrageous that it is not tolerated by a civilized society, and (3) it must result in serious mental injury." *Lyons v. Farmers Ins. Exchange*, 26 S.W.3d at 893 (citing *Bain v. Wells*, 936 S.W.2d 618 (Tenn. 1997)).

Another formulation declares that the conduct necessary to maintain a claim for outrageous conduct is that the "conduct must be so outrageous in character and extreme in degree to as to be beyond the pale of decency and that it must have caused serious mental injury to the plaintiff. The

-6-

conduct must be 'atrocious,' 'utterly intolerable,' and 'beyond all bounds of decency.'" *Goldfarb v. Baker*, 547 S.W.2d 568, 569 (Tenn. 1977) (citing *Medlin v. Allied Investment Corp.*, 398 S.W.2d 270, 274 (Tenn. 1966)).

Outrageous conduct does not include "mere insults, indignities, threats, annoyances, petty oppression or other trivialities." *Levy v. Franks*, 159 S.W.3d at 83; *Arnett v. Domino's Pizza I, L.L.C.*, 124 S.W.3d 529, 539 (Tenn. Ct. App. 2003) (quoting *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997)). Thus, a plaintiff seeking damages for intentional infliction of emotional distress must meet an "exacting standard." *Miller v. Willbanks*, 8 S.W.3d 607, 614 (Tenn. 1999). "Recovery for intentional infliction of emotional distress is limited to mental injury which is so severe that no reasonable person would be expected to endure it." *Arnett v. Domino's Pizza I, L.L.C.*, 124 S.W.3d at 540.

A case that presents some remarkable similarities to the one before us is *Goldfarb v. Baker*, 547 S.W.2d 568 (Tenn. 1977). In that case, an unidentified prankster threw a pie at a university professor, hit the target, and then ran away. The angered professor immediately accused one of his students of the assault. The next day, the professor forbade the student to attend class, had him ejected from the building when he attempted to take his seat, and in the presence of others accused him of blackmail. The student sued for outrageous conduct. He claimed that he was innocent of any wrongdoing and that the professor's actions had caused him "extreme mental anguish, humiliation, depression and distress."

The trial court found that the professor's alleged conduct was not sufficiently outrageous to be actionable and dismissed the complaint for failure to state a claim. The Tennessee Supreme Court affirmed the trial court. While it noted that "[t]he facts alleged in the complaint do, indeed, constitute a misfortune for the plaintiff," it concluded that those facts were not sufficiently egregious to establish a claim of outrageous conduct.

Similarly, Ms. Runions is understandably unhappy that she was expelled from TSU's nursing program and that her goal of earning a nursing degree has been frustrated. However, neither the administrators' decision to expel her from the program because of her grades nor the instructor's action in physically removing her from the classroom meets the exacting standard for recovery on a claim of outrageous conduct or intentional infliction of emotional distress.

### III.

The judgment of the trial court is affirmed. We remand this case to the Circuit Court of Davidson County for any further proceedings necessary. Tax the costs on appeal to the appellant, Jamie C. Runions.

_____

PATRICIA J. COTTRELL, P.J., M.S.

-7-